14129

WARING v. SOUTH CAROLINA POWER CO.

(181 S. E., 1)

*Messrs. Legare Walker* and *Hagood, Rivers & Young,* for appellant,

*Messrs. J. D. Parler* and *A. R. McGowan,* for respondent,

August 14, 1935.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This is an action based upon common-law fraud and deceit, and was tried before his Honor, Judge C. J. Ramage, and a jury, in Dorchester County, resulting in a verdict for the plaintiff in the sum of $1,000.00. The matter comes before us on appeal by the defendant from the order of the trial Judge overruling a motion for a directed verdict, upon three exceptions which raise one vital issue: That the trial Judge erred "in refusing to grant defendant's motion for a directed verdict where the only reasonable inference to be drawn from the testimony was that there was not a scintilla of evidence to show that the defendant was guilty of any fraud."

The gist and background of the action is contained in Paragraph 8 of the complaint, which alleges: "That the defendant, its agents and servants, have been guilty of fraud, in that they did knowingly, willfully, maliciously and falsely represent to this plaintiff that he was being released for a vacation, and did willfully, maliciously and falsely represent to this plaintiff that he would receive the commissions under and in pursuance of his contract of employment on the sales that were consummated while he, the plaintiff, was away on the supposed vacation; that the defendant, its agents and servants, did cleverly connive and scheme, and did willfully and falsely make misrepresentations to this plaintiff in an effort to, and did by such false acts and representations acquire valuable information concerning prospective sales, from this plaintiff; that the defendant, its agents and servants did knowingly, willfully, falsely and unlawfully represent to this plaintiff that he was released on vacation and his commissions on prospective sales when consummated would be paid to him; that the defendant, its agents and servants, did knowingly, willfully, maliciously and unlawfully, through false representations hold this plaintiff in suspense for a period of months under their

false promises, inducements and false representations in that they, the defendant, could reap the profits and benefits of the untiring efforts of the plaintiff and in preventing him, the plaintiff, from aligning or associating with other and competitive companies; that all of their said fraudulent acts and doings were knowingly perpetrated when made and were made with the express purpose of cheating and defrauding this plaintiff out of that to which they knew he was entitled and for the sole remuneration and gain of the defendant, all to the damage of the plaintiff in the sum of Five Thousand ($5,000.00) Dollars."

The defendant denied the material allegations of the complaint.

The case for the plaintiff depends wholly upon his own testimony, which tends to show that he was employed by the defendant in January, 1927, as a salesman to sell gas appliances and electrical appliances, and was assigned to work in the territory around Ridgeville, Holly Hill, and Eutawville. He started to work on a salary of $50.00 per month, together with 10 per cent. commissions on all sales consummated by him. This status continued until August 2, 1932. Plaintiff's earnings in 1929 amounted to $3,557.40, in 1930 to $4,201.97, and in 1931 to $2,292.44.

Virtually all of the plaintiff's dealings with the defendant were with Mr. Connelley, who was the sales manager. While at Holly Hill, upon the suggestion of Connelley, the contract between the plaintiff and the defendant was changed so that plaintiff would receive 10 per cent. commissions on all sales he made up to $1,200.00, and 14 per cent. on all sales over that amount. This change was made August 2, 1932, and plaintiff agreed to it. Prior to this time plaintiff had been selling demestic appliances, but under the new contract it was agreed that he would sell commercial appliances, and would be given for his territory the entire City of Charleston. It was his duty to make contact with prospective purchasers and to make daily reports of his work to the office.

He reported ten new prospects per day. Plaintiff testified that defendant had no right to change him to another territory nor to change his compensation without notice. He also testified that during the period he worked in Charleston under the new contract his compensation decreased constantly because the public did not buy the commercial appliances.

In November, 1932, he consummated one sale, and defendant "excused" him from further work and told him that they were going to take the territory away from him and, without his knowledge, sent another salesman into the territory, who consummated a sale to one of his prospects, the City Orphan House, on which sale his commission amounted to $180.00. The defendant tendered him this sum of $180.00 just before the trial was entered into.

After excusing him from further work, the defendant gave him thirty days within which to effectuate sales to prospective purchasers contacted by him, and agreed that he should be protected during that period from competing salesmen of the company. The latter part of November, 1932, the plaintiff interviewed Connelley, sales manager, concerning his money—presumably unpaid commissions on sales previously made. Connelley commended him on the sales he had made and on his record, and suggested to him that he take a vacation until the first of the year, at which time Connelley stated that the plaintiff would be given a good territory, to all of which plaintiff agreed. It was further agreed that the new territory would be an outlying district, where plaintiff could make more money. It was also agreed that plaintiff would be paid commissions on all sales completed with prospective purchasers in the Charleston territory whom he had previously contacted.

Plaintiff took the vacation, and, returning, interviewed Connelley about January 10, 1933, and three or four times between that date and May 26, 1933, about the promised job. Each time he was put off by Connelley, and told to come back.

Finally, on May 26th, during an interview, Connelley told him he liked him, did not want to lose his services, and would look out for him. Plaintiff told him that he was tired of his promises and would have to get another job, and Connelley told him he would be unable to find one.

The plaintiff was paid $19.00 by the defendant in accordance with an itemized statement rendered by him, after which plaintiff got a place as salesman with the Frigidaire people in Charleston, and later secured a position in Columbia with the Southern Scale and Refrigerator Company, and he was in the employ of the latter company at the time of this trial. He contends that he was in the employ of the defendant until May 26, 1933, when he quit, and during that time he was paid nothing. He could not state what his earnings were in 1932, but stated that the company's records would show the amount.

On cross examination plaintiff admitted that 1932 was a lean year; that the defendant and its employees were very friendly to him during the time that he worked for it.

H. H. Higgins, for the defendant, testified that he called Waring into the office in November, 1932, and definitely discharged him, because his services were unsatisfactory and unproductive and far below the business produced by the defendant's other salesmen; that he had warned Waring on several occasions that, if he did not become more active and increase his sales, the company would not keep him; that this trouble with Mr. Waring started in September, 1931, at which time the first warning was given him, and that he kept at him to increase his sales, but plaintiff did not improve; that Waring was employed on a commission basis, beginning the first of the year 1932.

J. P. Connelley, for the defendant, testified that he had supervision of the defendant's salesmen, and that the plaintiff was at one time a very satisfactory salesman and produced well until September 1, 1931, when he got into a sales slump and never got out of it. He instructed Mr.

Higgins to discharge plaintiff, and this was done in November, 1932. After the discharge, the plaintiff came into his office and told him that Higgins had discharged him, and he wanted to know if he could assist him with some taxes; that he could not afford to lose his job at that time. He told plaintiff that. he had been with the company a number of years and had been given ample time, after repeated warnings, to improve, but that he had not done so, but he would give him an opportunity to sell small appliances in February, and told him to come back at that time, that something might open up. He did not definitely promise him anything. Plaintiff came back about January 1st, and was employed as crew supervisor in February for the sale of small appliances. He worked four or five days, and sold one flatiron. He stated that the defendant had no custom of giving salesmen vacation in December, when business is at its best; that would be no benefit to the salesman or the company.

Fraud is defined in *Thompson v. Bass,* 167 S. C., 345, 166 S. E., 346, 350: "Fraud is a false representation of a fact, made with knowledge of its falsity, or recklessly, without belief in its truth, with the intention that it shall be acted upon by the complaining party, and actually inducing him to act upon it to his injury. * * * *Southern Irion & Equipment Co. v. Bamberg, E. & W. R. Co.,* 151 S. C., 506; 149 S. E., 271, 277."

The question of actionable fraud was also considered in *Halsey v. Minnesota-South Carolina Land & Timber Co.,* 174 S. C., 97, 177 S. E., 29, at page 37, where the Court held: " 'To constitute actionable fraud, it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was *false, or made it recklessly, without any knowledge of its truth and as a positive assertion;* (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he there-

by suffered injury.' (Italics added.) *Halsey v. Minnesota-South Carolina Land & Timber Co.* (C. C. A.), 28 F., (2d), 720, 722."

Applying these principles to the testimony in the case at bar, we must confess our utter inability to detect fraud or the evidence of fraud from the testimony adduced. Viewing the testimony in a light most favorable to the plaintiff and giving him the benefit of every doubt, there is, as we think, not the slightest basis in the evidence for a finding that the alleged representation as to future employment was not made in good faith or that it was part of a general fraudulent design to prevent the plaintiff from securing employment elsewhere. To conclude otherwise would not only be to ignore the obvious, but would be subversive of justice.

A consideration of the whole record shows that this is the only reasonable inference to be drawn from the conversation related between the plaintiff and Mr. Connelley.

In *Coleman v. Stevens,* 124 S. C., 8, 117 S. E., 305, at page 307, the Court approved the following charge to the jury:

" 'Deceit or fraudulent representation, in order to be actionable, must relate to existing or past facts, and the fact that a promise made in the course of negotiations is never performed does not in and of itself constitute nor evidence fraud. A mere breach of a contract does not constitute fraud.' * * *

" 'A future promise is not fraudulent, unless such a future promise was part of a general design or plan existing at the time, made as part of a general scheme to induce the signing of a paper or to make one act, as he otherwise would not have acted, to his injury.' "

In respondent's brief it is stated: "Had appellant in November, 1932, paid the respondent what they owed him and discharged him, of course, he would have no cause of action. They did neither, but on the contrary fraudulently caused him to think he was still in the employ of the appellant and

deceived him into believing that by not accepting a position with some competitive company that a rich reward was in store for him in the form of better territory and an opportunity for a greater income."

And it is upon this issue presented in that portion of the brief from which we have just quoted that the real question in the case hinges.

The complaint, abounding as it does in allegations of fraud and false representations, has far outstripped the testimony. The brief of respondent in its assertions, conclusions, and inferences of fraud committed by the defendant, likewise leaves the testimony lagging far behind. The argument that the defendant fraudulently caused the plaintiff to believe that he was still in its employ, and deceived him into believing that, by not accepting a position with some competitive company, a rich reward was in store for him, is invalid and unsupported by the testimony.

An examination of the record shows that in November, 1932, when he states that the company excused him from further work in the City of Charleston and the defendant states that he was discharged, he was then far behind every other salesman in producing business and had been so for months. The figures speak for themselves. He agreed to every change made in his contract with the defendant with reference to salary, rate of commissions and territory. The only reasonable inference to be drawn from the testimony is that he was discharged because of inefficiency in producing business. The inference cannot be indulged that the defendant regarded him as being important to its sales organization or that it feared his employment by a competing company.

In refusing the motion made for a directed verdict, the trial Judge stated: "I am going to let the case go to the jury, but I will have to change my mind if I let a verdict stand if they find against the defendant."

After the rendition of the verdict in this case, according to the record, "A motion for a new trial was made and after the Court adjourned counsel for plaintiff and defendant agreed that as an appeal would be taken by whichever side lost the motion, it would be more considerate to the trial Judge not to take up his time, but to appeal upon the record as it stood."

From the quoted statement made by the trial Judge, we are satisfied that, if the motion for a new trial had been pressed, it would have been granted.

The respondent in his brief has earnestly called to our attention the familiar rule that the Court in passing upon a motion for a directed verdict made by the defendant, must consider the testimony in a light most favorable to the plaintiff.

This Court has held in cases too numerous to cite that, when a motion for a directed verdict is made by the defendant, the evidence in the cause must be considered most favorably to the plaintiff in determining whether the motion should be granted. *Crews v. Sweet,* 125 S. C., 303, 306, 118 S. E., 613, 29 A. L. R., 43.

And it has been decided that not only should questions of fact be submitted to the jury when they are in dispute, but also the matter is properly for the jury to pass upon when the question is as to inferences to be drawn from such facts after the facts have been determined. *Anderson v. H. & B. R. R. & L. Co.,* 134 S. C., 185, 132 S. E., 47.

It has also been held that a case should be submitted to the jury not only when the testimony is conflicting, but likewise when the inferences from it are in doubt. *Keistler Co. v. Ætna Insurance Company, Hartford, Conn.,* 124 S. C., 32, 117 S. E., 70.

However, in applying this well-recognized rule, it must be kept in mind that it is still an indispensable prerequisite that there must be *some* evidence upon

which the rule shall operate. The requirement that the testimony shall be considered in a light most favorable to the plaintiff does not by some legerdemain serve as a substitute for evidence, nor is it of sufficient potency in itself to create and generate evidentiary matter. There must always be present a scintilla of evidence before the rule may be invoked.

In a very recent decision of this Court, *Turner v. American Motorists Ins. Co.,* 176 S. C., 260, 180 S. E., 55, 56, Mr. Justice Bonham, who wrote the opinion, makes some very pertinent observations with reference to the scintilla rule. In this case he says:

"The appellant labors under the erroneous idea that the Supreme Court has overruled the pronounced principle, to wit, if there is any relevant testimony, amounting to a scintilla, it must be left to the jury to determine its force and effect. The meaning of the rule is that there must be some *evidence* arising out of the testimony which elucidates the issues of fact, and which enables the jury to form an intelligent conclusion. It does not authorize the admission of speculative, theoretical, and hypothetical views. It does not set aside the rule of force in this State relating to *res ipsa loquitur,* which doctrine does not prevail in this State.

* * * Whilst adhering to the scintilla rule, this Court has recognized a rule supplemental to the scintilla rule, which is thus propounded in the case of *National Bank v. Thomas J. Barrett, Jr., & Co.,* 173 S. C., 1, 174 S. E., 581, 582: 'If it be conceded that there may be deduced by a process of unusual finesse of reasoning that there is a scintilla of evidence * * * nevertheless there is another rule, more founded upon common sense and reason, to the effect that when only one reasonable inference, not just one inference, but one reasonable, inference, can be deduced from the evidence, it becomes a question of law for the Court, and not a question of fact for the jury.' "

He concludes by stating: "This declaration is but to say that the scintilla of evidence upon which a case should be ·sent to the jury must be real, material and pertinent and relevant evidence, not speculative and theoretical deductions."

In the instant case we find only speculative and theoretical deductions and not one word of positive evidence or legitimate inference.

Fraud must be proved, and, while it may be proved by circumstantial evidence, it cannot be presumed. *Chandler v. Abney*, 166 S. C., 532, 165 S. E., 190; *Thompson v. Bass, supra*.

We have held that, where one acts within his legal rights, fraud will not be presumed. *Tolbert v. Roark*, 126 S. C., 207, 119 S. E., 571. In the case at bar, the plaintiff's contract was for no definite period, and the defendant was within its rights in discharging him.

The motion for a directed verdict should have been granted.

It is the judgment of this Court that the judgment of the Circuit Court·be reversed and that the case be remanded in order that judgment may be entered up in favor of the defendant.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.