17280

DAN MELTON, Appellant, v. TOM RITCH and One Buick Automobile, Respondent

(97 S. E. (2d) 509)

*Messrs. Lindsay & Lindsay,* of Bennettsville, *for Appellant,*

*Messrs. Nelson, Mullins & Grier,* of Columbia, and *William A. Rogers,* of Bennettsville, *for Respondents,*

April 8, 1957.

Oxner, Justice.

Dan Melton brought this action to recover damages to person. and property resulting from a collision between his Ford. truck and a Buick automobile operated by Tom Ritch. The trial resulted in a directed verdict for Ritch, the defendant, upon the ground that there was no proof that he was guilty of negligence. More specifically, the trial Judge held that the undisputed evidence showed that the defendant, while proceeding on his proper side of the road, was confronted with a sudden emergency created by the conduct of third parties approaching from the opposite direction on the wrong side of the road and was, as a matter of law, not negligent in turning to the left in order to avoid a head on collision with the vehicles of these third parties, even though this caused a collision with the Ford truck of plaintiff who was approaching in the opposite direction on his right side of the road. This conclusion is challenged by plaintiff on this appeal. He contends that the issue of defendant's negligence should have been submitted to the jury.

The collision occurred at about 9:45 P.M. on March 25, 1956, at a point on State Highway No. 38, two or three miles north of Bennettsville. This is a hard surfaced highway, approximately 22 feet wide, with grass shoulders on each side. The shoulders were wide enough to easily permit the parking of an automobile thereon. There were no obstructions to prevent one from driving off the highway onto the shoulders. At the place of the accident the highway is straight and level and a vehicle approaching from the north could be seen for a considerable distance. The night was dark but the weather was clear.

While the plaintiff was proceeding in a southerly direction on his proper side of the road, at a speed of 45 or 50 miles an hour, the automobile of the defendant, also traveling on his proper side of the road, approached in the opposite direction at about the same rate of speed. According to the

plaintiff, just before the two vehicles met, the defendant suddenly and without warning swerved his automobile to the left and struck the left front of the truck when it was about two feet off the pavement. Plaintiff says that when he saw a collision was imminent, he immediately slowed down and drove to the right.

Plaintiff was alone in the truck. In the Buick automobile with the defendant was one Monty Wells. The latter did not testify. Defendant's testimony was substantially as follows:

As he was traveling in a northerly direction at a speed of about 50 miles per hour, he saw approaching him quite a distance ahead a motor vehicle, which later proved to be plaintiff's truck, followed by two cars abreast of each other. When about three-quarters of a mile from these vehicles, defendant's friend and companion, Monty Wells, remarked, "Look coming there, Tom." A little later Wells exclaimed: "Here comes some cars; get over here on the shoulder." Shortly before defendant met these vehicles, one of the cars following plaintiff pulled back behind the other but remained on defendant's side of the road. Wells then said to defendant: "Tom, we're dead, pull over to the right." When about 50 feet away from plaintiff's truck, defendant in order to avoid a collision with the oncoming car on his side of the road, swerved to the left and the left front of defendant's car struck the truck of the plaintiff on the latter's side of the road. The cars of these third parties then passed around the wrecked vehicles on the left side of the road.

The explanations given by defendant for not pulling to the right on the shoulder are somewhat conflicting. On one or two occasions he said he had a right to remain in his lane of traffic. At several other points in his testimony he said he was faced with a head on collision with only a second to think and concluded the the safest course to pursue was to turn to the left. We take the following from his testimony:

*Cross-Examination*

"Q. * * * Tom, you are convinced now really though, that if you had pulled to the right, if you had of pulled to the right, you wouldn't have had a wreck and we wouldn't be in this court room? A. Yes, sir, if I had pulled to the right. * * *"

*Re-direct Examination*

"Q. Mr. Ritch, how much time did you have to make this decision that Mr. Lindsay is talking to you about? A. Well, the last time, I didn't have but just maybe a few seconds.

"Q. Just like that (snaps fingers) you had to do something? A. Yes, sir.

"Q. When you realized the danger of the situation, how far away were the two racing cars from you? A. Well, the last time—well, when they was right, I would say about fifty feet in front of me.

* * *

"Q. Mr. Ritch, how far away from you were the two racing automobiles when you realized that an accident was going to happen? A. I would say about fifty feet.

"Q. Is that the first time you realized? A. Something—

"Q. (Continued) this something was going to happen. A. Was going to happen."

*Re-cross Examination*

"Q. * * * If you had turned—just say you turned to the right; that was your impulse; if you had taken that impulse and gone to the right, they would have had plenty of room to come by, wouldn't they?

A. Yes, if I had pulled off before they even got to me over on the shoulder of the road.

"Q. If you A. (Continues) But I had as much right on that highway as they did.

"Q. You had just as much right in that lane of traffic as they did, didn't you? And there wasn't any reason for

you to get out of it, was there? A. Because I was going the right way and they was going the wrong way.

"Q. And the only reason you finally decided you better get out of this lane was because those boys was going to run into you. Is that right? A. Yes, sir. And Mr. Melton's truck, it was going the slowest and I picked out the slowest thing to hit.

"Q. (Laughing) You took the lesser of two evils. Is that right? A. That's right."

Considering, as we must, the foregoing testimony, as well as all reasonable inferences to be drawn therefrom, in the light most favorable to the plaintiff, did the Court below err in holding as a matter of law that the defendant was not negligent in swerving to the left side of the road?

Although the statute, Section 46-383 of the 1952 Code, as well as the uniformly recognized custom in this country, requires motorists meeting from opposite direction to pass each other to the right the failure to do so is not necessarily an act of negligence. Blashfield, Cyclopedia of Automobile Law and Practice, Volume II, Section 920. Indeed, a motorist may be bound to technically violate a statute regulating traffic, if by so doing he can avoid inflicting injury to person or property. *Sims v. Eleazer,* 116 S. C. 41, 106 S. E. 854, 24 A. L. R. 1293; *Walker v. Lee,* 115 S. C. 495, 106 S. E. 682; *Coffee v. Anderson County,* 224 S. C. 477, 80 S. E. (2d) 51. Whether a person in meeting a car coming from the opposite direction is justified in turning to the left instead of to the right depends upon the surrounding circumstances. The test is whether he uses due care and ordinarily presents factual issues for the jury to decide. Blashfield, *supra,* Volume II, page 68 and Volume 10, page 554. By reference to the cases reviewed in an annotation in 47 A. L. R. (2d), commencing on page 69, it will be noted that only in rare instances has it been held that a person meeting a vehicle approaching

in the opposite direction was as a matter of law free of negligence in turning to the left. On page 82 of this annotation, it is stated: "In accordance with the generally accepted view that the determination whether a driver is negligent in turning to his left upon meeting another car approaching from the opposite direction on the wrong side of the road usually involves a question of fact which should ordinarily be submitted to the jury, the courts have frequently sustained verdicts finding a driver so turning guilty of negligence."

In determining whether or not a person was justified in turning out to the left, the usual rules applicable to acts in emergencies generally apply. *Gilbert v Lewisburg Ice Cream Co.,* 117 W. Va. 107, 184 S. E. 244. When the driver of an automobile is confronted with a sudden peril brought about by the negligence of another, he is not held to the exercise of the same degree of care as when he has time for reflection. If he has used due care to avoid meeting such an emergency and after it arises, he exercises such care as a reasonably prudent driver would use under the attendant circumstances, he is not negligent. In *Porter v. Cook,* 196 S. C. 433, 13 S. E. (2d) 486, 488, the Court said: "It is settled by a great body of decisions that an automobile driver, who, by the negligence of another and not by his own negligence, is suddenly placed in an emergency and compelled to act instantly to avoid a collision or an injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice." As there pointed out, the question of whether such a person exercised due care under the circumstances is ordinarily one of fact for the jury.

Considering the evidence before us in the light of the foregoing principles, we think the Court erred in directing a verdict for the defendant. The question of his negligence should have been submitted to the jury. It can be reasonably inferred from the testimony that the

two cars following plaintiff's truck were racing and that the reckless conduct of these drivers could have been observed quite a distance ahead. Defendant's companion noticed something unusual when the automobiles were three-quarters of a mile up the road. Shortly thereafter he suggested that defendant pull over on the shoulder. The defendant did not heed this warning but continued in his lane of traffic without materially reducing his speed or taking other precautions. He says he did not recognize the impending peril until the approaching cars were about fifty feet away. But it was a question for the jury to determine whether he should have discovered it earlier. He apparently took no steps to avoid a collision until just before meeting plaintiff's truck. We think there may be a reasonable difference of opinion as to whether he used due care under all the circumstances. His friend evidently did not agree with his course of action because he called defendant's attention several times to the danger ahead and suggested that he pull to the right on the shoulder.

It is earnestly argued that defendant had a right to assume that these third parties would return to their proper lane of traffic. But it was for the jury to determine whether in the exercise of reasonable care he should have become aware earlier that they would not do so. The determination of just when reliance upon the assumption is no longer justified is frequently a troublesome one which ordinarily involves an issue of fact.

The trial Judge rested his decision largely upon *Porter v. Cook, supra,* 196 S. C. 433, 13 S. E. (2d) 486. We do not regard that case as controlling. It is distinguishable on the facts. There an eleven year old boy suddenly emerged on a bicycle from a side street and proceeded into a main highway upon which a bus was traveling at a very moderate rate of speed. The driver of the bus swerved to the left to avoid striking him. The boy, after turning into the street, several times bumped into the bus and finally lost his balance and fell under the wheel of the bus, resulting in

his instant death. The Court held that there was no testimony showing negligence on the part of the bus driver and that the Court below properly granted a nonsuit.

We have carefully considered the case of *Havens v. Havens*, 266 Wis. 282, 63 N. W. (2d) 86, 47 A. L. R. (2d) 1, strongly relied on by counsel for defendant. The court held that the defendant in that case was as a matter of law not negligent in leaving his lane of travel and swerving to the left for the purpose of avoiding a collision with a vehicle approaching in the opposite direction on the wrong side of the road. While there is some similarity in the facts, the *Havens case* has several features which we think clearly distinguish it from the instant case.

Judgment reversed and new trial granted.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.