17400

JASON GREEN, Respondent, v. CLAUDE E. SPARKS, Appellant
(102 S. E. (2d) 435)

*Messrs. Walker & White,* of Union, *for Appellant,*

*Messrs. David N. Wilburn, Jr., Mike S. Jolly* and *Long & Long,* of Union, *for Respondent,*

March 11, 1958.

Moss, Justice.

This is an action brought by Jason Green, the respondent herein, against Claude E. Sparks, the appellant, to recover damages for personal injuries and property damage sustained by the respondent on October 27, 1956.

The complaint alleges, in substance, that as the respondent was driving his Ford automobile in a southerly direction around a curve on the Cross Keys-Sedalia hard-surfaced highway, the appellant backed his Chevrolet automobile from a private driveway onto the highway into the path of the respondent's automobile, thereby causing him, in order to avoid colliding with the automobile of the appellant, to crash into a ditch on the eastern side of said highway, thereby wrecking his automobile and inflicting personal injuries upon him. The complaint alleges that the resulting personal injuries and property damage were proximately caused by the negligent, careless, reckless and wanton acts of the appellant. The complaint alleges that the appellant drove his automobile without maintaining a proper lookout; in driv-

ing and backing said automobile out and into a public highway in violation of the statutory laws of this State, at a rate of speed too fast for existing conditions; in failing and refusing to give any warning of the backing operation of said automobile out into the highway, and refusing to yield the right of way to the respondent as required by law.

The answer of the appellant contained a general denial and also alleged as a defense that the injuries and damage to the respondent, if any, were caused and occasioned by the sole negligence and willfulness of the respondent; and also that the respondent was guilty of contributory negligence and willfulness, in that he was driving his automobile around a curve at a high, excessive and unlawful rate of speed, without having his said automobile under proper control; in driving off the traveled portion of said highway to pass the automobile of appellant when there was ample space upon the traveled portion of said highway for the passage of his automobile, and that he was operating his said automobile with inadequate and defective brakes and tires.

The appellant also set up by way of defense that an accord and satisfaction had been reached and concluded by and between the respondent and the appellant on October 29, 1956, whereby appellant paid to the respondent the sum of $375.00 in compromise settlement of the liability of the appellant, if any, to respondent; and that the respondent executed a release discharging the appellant from any and all liability. The respondent filed a reply, denying the allegations of the answer with reference to the release. He asserts that if he executed a release, which he does not remember, that it was at a time when he "was in a drugged or semiconscious state and during which time his mind and mental processes were befuddled, stupored and impaired, and during which time the plaintiff was utterly incapable and incompetent to make any intelligible decisions." He also asserts that if he executed a release to the appellant that same was obtained through coercion, overpersuasion, and exploiting his poverty

stricken condition and necessitous circumstances. He further alleges that the consideration for the purported release was grossly inadequate and completely out of proportion to the serious injuries and damages sustained. Respondent further alleges that simultaneously with the service of the reply, for the purpose of securing the cancellation of said release, he tendered to the appellant the consideration for said release in the amount of $375.00 but the same was refused by appellant. This said sum was immediately deposited by the respondent with the Clerk of Court for Union County, South Carolina, as a continuing tender.

This action was tried before the Civil Court of Union and resulted in a verdict for the respondent for actual damages.

At appropriate stages of the trial the appellant moved for a directed verdict, judgment *non obstante veredicto,* and alternatively for a new trial. The basis of such motions was that the negligence of the respondent was the sole proximate cause of his injuries and damage; and alternatively that the respondent was guilty of contributory negligence, in that he operated his said automobile upon a wet highway, at an excessive rate of speed, without keeping same under proper control, said car being equipped with defective rear tires and brakes. The other ground submitted was that the only reasonable inference to be drawn from the evidence was that a valid accord and satisfaction had been reached, and that if the respondent had not assented to said accord and satisfaction at the time the same was made, he later ratified and confirmed same by acquiescing in it and by accepting the money paid and using same in the discharge of his medical and hospital bills.

The appellant also asserted as a ground for a new trial, the failure of the trial Judge to charge the jury pursuant to his request, the following:

"I charge you further that if an Accord and Satisfaction was made in this case and even if the plaintiff did not assent to it at the time it was made, yet if the plaintiff later ratified

and confirmed it by accepting the money and using it, that would amount to a ratification in law and the plaintiff would be bound by it."

The appellant also asserts as a ground for a new trial that the Court committed error in permitting counsel for the respondent, over objection, to cross-examine the appellant and his witness, Bennie Hill, with respect to the collection of damages from Lockhart Power Company for certain personal injuries sustained by them.

The trial Judge refused the motions for a directed verdict, judgment *non obstante veredicto* and for a new trial. The case is before this Court upon a number of exceptions.

The first question for determination is whether there was error on the part of the trial Judge in refusing the motions for a directed verdict and judgment *non obstante veredicto*. The appellant asserts that there was no proof of actionable negligence on his part. He also says that the injuries and damage to respondent were proximately caused by his own negligence. He further asserts that if he was guilty of any negligence, that the respondent was likewise guilty of negligence, which was a contributing proximate cause to his injuries and damage. This question necessarily requires us to review some of the testimony.

The respondent was operating his motor vehicle in a southerly direction, around a curve near what is known as the old Bishop Place on the Cross Key-Sedalia hard-surfaced highway. He says that he was driving at a speed between 40 and 50 miles per hour. A private driveway leads off of the main highway towards the West at said curve and to a house owned by the appellant. The respondent testified that when he was between 70 and 80 feet of the private driveway that the appellant backed his automobile out of the private driveway, which was bounded by hedges, onto the hard-surfaced road. The respondent testified that as the car of the appellant continued to back across the highway that he drove to the left in an effort to avoid striking the automobile

of the appellant. The respondent was asked if he did not have plenty of room to travel on the road behind the appellant's car and not hit it. He said: "I don't see how I could do that. If I had 5 or 6 feet I could have kept going." He also testified that in his effort to avoid striking the car of appellant he ran into the bank of the highway on his left.

The evidence shows that on the day in question the pavement was wet and the tires on the car of the respondent were slick. He was familiar with the road, as well as the curve and driveway leading to appellant's house on the right of the hard-surfaced road.

The appellant testified that the hard-surfaced road in question was 20 feet wide. He testified that he had gone to his farm that morning to see a tenant and that when he entered the private driveway, he discovered that the tenant was not there, due to the absence of the truck. He then reversed the gears of his car and started moving backwards at a speed of 3 or 4 miles an hour. He says that when he backed into the highway and as his wheels got onto the hard surface that he saw the car of respondent coming and immediately applied his brakes. He also testified that his car occupied not over 5 feet of the paved surface of the road and that left approximately 15 feet for the passage of the respondent's automobile. Appellant also says that upon seeing the car of respondent he stopped his car, changed gears and moved forward to yield the right of way to the respondent. He says that the respondent had sufficient passage space available to him so that he could have proceeded on down the road without mishap, if he had had his automobile under proper control and had been driving with prudence and caution.

A State Highway Patrolman made an investigation of the wreck and he testified that the appellant told him that "Jason hit the bank instead of hitting me." He also testified, there being no objection thereto in the record, that he found a violation of law by the appellant, such being the "viola-

tion of entering a highway and failing to yield the right of way." He testified also that this violation caused the accident.

We deem it unnecessary to further review the testimony.

It is provided in Section 46-424, of the 1952 Code of Laws of South Carolina, that:

"The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on such highway."

It is provided in Section 46-492 of our Code, that:

"The driver of a vehicle shall not back it unless such movement can be made with reasonable safety and without interfering with other traffic."

The testimony above recited indicates the violation by the appellant of the two foregoing statutes. It was the duty of the appellant, when he was backing out of the driveway into the highway to be vigilant, watchful and to anticipate and expect the presence of other vehicles upon said highway. It was his duty to ascertain whether the highway was clear so that he could enter the same without interfering with the use thereof by vehicles approaching on such highway.

This Court has stated in *Chapman v. Associated Transport, Inc.,* 218 S. C. 554, 63 S. E. (2d) 465, 469, the following:

"The violation of an applicable statute is negligence *per se,* and whether or not such breach contributed as a proximate cause to plaintiff's injury is ordinarily a question for the jury. *Eickhoff v. Beard-Laney, Inc.,* 199 S. C. 500, 20 S. E. (2d) 153, 141 A. L. R. 1010; *Lawrence v. Southern Ry., Carolina Division,* 169 S. C. 1, 167 S. E. 839; *Dickson v. Inter-Carolinas Motor Bus Co.,* 161 S. C. 297, 159 S. E. 625."

In *Morrow v. Evans,* 223 S. C. 288, 75 S. E. (2d) 598, 601, this Court stated:

"Causative violation of an applicable statute constitutes actionable negligence and is evidence of recklessness, willfullness and wantonness. *Lumpkin v. Mankin,* 136 S. C. 506, 134 S. E. 503; *Ralls v. Saleeby,* 178 S. C. 431, 182 S. E. 750; *Vernon v. Atlantic Coast Line R. Co.,* 221 S. C. 376, 70 S. E. (2d) 862."

We conclude that there was sufficient evidence requiring the trial Judge to submit to the jury the question of the negligence and willfullness of the appellant. It was a question for the jury to determine whether the appellant exercised due care in entering the highway from the private road. Likewise, it was for the jury to determine whether appellant, in backing his automobile into the highway, took any precaution for the safety of any person that might be affected by such operation. If the appellant violated the foregoing statutes, such would constitute negligence *per se* and it would be a question for the jury to determine whether or not such violations contributed as a proximate cause to respondent's injury. *Field v. Gregory,* 230 S. C. 39, 94 S. E. (2d) 15; *Chesser v. Taylor,* S. C., 100 S. E. (2d) 540.

The evidence in this case is contradictory. The appellant testified that even though his car was partially in the highway, there was sufficient paved surface of the road for the respondent to pass to the left. The appellant also says that he moved forward out of the road in order to yield the right of way to the respondent. The respondent, on the contrary, testified that he did not have sufficient space in which to pass the car of appellant and in order to avoid striking the car of appellant he pulled to the left, and as a result ran into the bank of the highway. In view of the contradictory nature of the evidence given in this case, more than one reasonable inference can be drawn therefrom. The trial Judge could not declare, as a matter of law, that the respondent was guilty of contributory negligence and willfullness.

In the case of *Cox v. McGraham,* 211 S. C. 378, 45 S. E. (2d) 595, 596, this Court said:

"The testimony of the defendants is contradictory in almost every respect except that there was a collision. However, when a motion is made by the defendant for a directed verdict in his favor, the evidence in the cause must be considered most favorable to the plaintiff in determining whether or not the motion should be granted; and if more than one inference can reasonably be drawn therefrom, it is the duty of the trial Judge to submit the case to the jury. *Crews v. Sweet,* 125 S. C. 303, 118 S. E. 613, 29 A. L. R. 43; *Ford v. Atlantic Coast Line R. Co.,* 169 S. C. 41, 168 S. E· 143; *Lower Main Street Bank v. Caledonian Insurance Co.,* 135 S. C. 155, 133 S. E. 553; *Lynch v. Pee Dee Express,* 204 S. C. 537, 30 S. E. (2d) 449.

"Not only should questions of fact be submitted to the jury when they are in dispute, but the jury must also pass upon the question of inferences to be drawn from such facts after they have been determined. See *Anderson v. Hampton & Branchville R. & Lumber Co.,* 134 S. C. 185, 132 S. E. 47; and in the case of *Keistler Co. v. Aetna Ins. Co.,* Hartford, Conn., 124 S. C. 32, 117 S. E. 70, it was held that a case should be submitted to the jury not only when the testimony is conflicting, but when the inferences from such testimony are in doubt. *Waring v. South Carolina Power Co.,* 177 S. C. 295, 181 S. E. 1.

"Contributory negligence was alleged in the Answer and conflicting testimony heard relating thereto; therefore, this question should also have been submitted to the jury for their determination as the same rule applies to the question of contributory negligence. Where more than one inference can reasonably be drawn from the testimony, such testimony being viewed most favorably to the plaintiff, it is the duty of the trial Judge to submit this issue to the jury for its determination. *Lineberger v. City of Greenville,* 178 S. C. 47, 182 S. E. 101."

It was for the jury to determine whether in the sudden emergency which confronted the respondent he exercised ordinary care and judgment in turning out to the left. In the recent case of *Melton v. Ritch,* 231 S. C. 146, 97 S. E. (2d) 509, 512, we said:

"In determining whether or not a person was justified in turning out to the left, the usual rules applicable to acts in emergencies generally apply. *Gilbert v. Lewisburg Ice Cream Co.,* 117 W. Va. 107, 184 S. E. 244. When the driver of an automobile is confronted with a sudden peril brought about by the negligence of another, he is not held to the exercise of the same degree of care as when he has time for reflection. If he has used due care to avoid meeting such an emergency and after it arises, he exercises such care as a reasonably prudent driver would use under the attendant circumstances, he is not negligent."

It is our conclusion that the question of appellant's negligence and willfulness was properly submitted to the jury. We likewise conclude that there was no error in submitting to the jury the question of the contributory negligence and willfulness of the respondent.

The next issue for determination is whether or not the trial Judge committed error in not directing a verdict or granting the motion for judgment *non obstante veredicto* on the ground that the respondent was barred from recovery in this action by a valid and binding accord and satisfaction.

It appears from the testimony that after the respondent was injured at about 8:00 o'clock A. M., October 27, 1956, he was carried to a hospital in Union, South Carolina. The appellant testified that on the same day, around noon, that he went to the hospital and talked with the respondent. He says that the respondent asked him "What you going to do about the car?" And in reply, he told him, "Wait a day or two and we will discuss the matter and we will arrive at a settlement." The appellant testified that the respondent understood what the appellant was saying to him. The appel-

lant also says that he was contacted on Sunday, this being the next day after the injury to the respondent, by a mutual friend of the respondent and Alex Green, father of the respondent, for the purpose of obtaining a settlement. He says that as a result of the information he obtained by contacting the physician attending the respondent, "I found out he was going to need money. I said, I am willing to furnish money to help defray your hospital expenses, I will do it on these conditions. I am going to want and expect to have a complete release and settlement, if I furnish any money for these expenses. I said, now, you don't have to do anything at all and make no settlement. What you do is purely voluntarily. You can bring court proceedings against me and possibly you might get some damages and you might not get anything at all. If we come to an agreement here, as far as any damages are concerned, a jury or court might say more than what we say, they might say less, or that it wasn't my fault at all. I am more concerned with your injury. I might, if it is permissible to give the reason, I was more than willing to help him."

The appellant testified that he had an agreement in his pocket already prepared and that he read this agreement to the respondent. He admits that he had not discussed an amount with the persons who had contacted him with reference to a settlement. He testified, "I am willing to give you $350.00 to help you." Later he told him since he was to be transferred from the hospital at Union, South Carolina, to a hospital in Greenville, South Carolina, that he would add $25.00 more to help defray the expenses of transportation. He says that the respondent agreed to accept the amount of $375.00 in full and complete settlement of any liability, if any, of the appellant to the respondent, and that the respondent executed a release in the presence of two nurses who were called in as witnesses to the instrument to be executed. These nurses testified that they saw the respondent make his mark on the release, the paper being held by the appellant for such execution. They testified that they

did not read the release to the respondent nor hear it read to him.

Dr. P. K. Switzer, the attending physician, testified that he had a conversation with the respondent on the day of the execution of the release and that he advised him that the hospital at Union, South Carolina, was not prepared to take care of his condition, that he would require a specialist to observe and treat him, and he was referred to a physician in Greenville, South Carolina. He further testified that he told him it would require a great deal of money for the specialist in Greenville and that the respondent told him that the appellant would arrange for him to have some money to take care of these expenses. He also testified that the respondent's mind was apparently clear, and from what he observed about the respondent, he was mentally capable of making a contract.

In reply to this testimony given on behalf of the appellant, the respondent testified that he was unconcious from the time he entered the hospital on Saturday until Wednesday of the following week. He testified he did not remember being carried to the hospital or of the decision to remove him to the Greenville hospital. He says that the first time he saw the appellant and talked with him was after he returned from the hospital in Greenville. He further testified that if he saw the appellant at the Union hospital on Monday at the time of the execution of the release, he did not know it. He was asked the following specific questions and gave the answers here recorded:

"Q. You didn't see him on Monday morning when you left to go to Greenville? A. If I seen him I don't know it. I wouldn't have known him from you and I been knowing him a long time.

\* \* \*

Q. So you deny that you had a conversation with Mr. Sparks on Monday morning before you left? A. I don't know nothing about it.

\* \* \*

Q. You didn't know Mr. Claude Sparks gave you $375-.00 to pay Greenville hospital? A. I didn't know I had any money until my wife told me on Thursday.

\* \* \*

Q. You sign or placed a mark that morning. (Referring to the release.) A. I sure didn't know anything about it.

Q. That was done in the presence of Edna R. Baldwin and Irene A. Nave, as witnesses? A. I don't know anything about it.

\* \* \*

Q. State whether or not this paper, I showed you a minute ago, was read over to you? A. I don't know nothing about it.

Q. And state whether or not you put your X mark on this paper? A. I don't know anything about it.

Q. State whether or not these two ladies put their names on there as witnesses being present? A. I don't know nothing about it. They can speak for themselves."

Verena Green, the wife of the respondent, testified with reference to the visit of the appellant to the hospital room of the respondent, as follows:

"A. When Mr. Sparks came in he had some papers with him and told me that he had learned from the doctor that Jason would have to have some money to get to Greenville hospital. He first said he was going to pay $350.00 and then he said he would make it $375.00.

Q. He said he was going to give that to Jason? A. That's what he said. He said he was going to give a check for that.

Q. What was Jason doing during the time Mr. Sparks was telling you that? A. In the bed.

Q. Could Jason, in your opinion, tell what was going on? A. No, sir.

\* \* \*

Q. Did Mr. Sparks at any time tell you if you all signed that paper it was a complete release to him? A. No, sir, I hadn't heard about no release.

Q. Did Mr. Sparks mention anything about settling? A. No, sir."

The testimony also shows that the respondent was ignorant and illiterate. He could not read or write. The testimony also shows that he did not have the money to finance or pay for the treatment of his injuries. The record shows that the respondent suffered "open reduction and fixation of fracture of the lower jaw and fixation of fracture of the upper jaw." He also had lacerations of the lip and soft tissues of the mouth, and it was necessary to extract eight of his teeth. The treatment administered necessitated the wiring of the jaws of the respondent.

The respondent says that the release was obtained by the appellant through coercion, over-persuasion, exploiting his poverty stricken condition and necessitous circumstances, and while his mental condition was such that he could not make any intelligible decisions.

What was said in *Gomillion v. Forsythe*, 218 S. C. 211, 62 S. E. (2d) 297, 301, 53 A. L. R. (2d) 169, is here applicable. We quote:

"The allegations of the reply may be construed to cover both 'fraud in the factum' and 'fraud in the treaty'; and we think there was some evidence as to each. Fraud in the factum, of course, relates to the matter of the manual signing of the paper, and if the plaintiff at the time she signed it had sufficient mental capacity to understand what she was doing, then there was no fraud in the factum.

"But even if there was no fraud in the factum, there was testimony requiring submission to the jury of the issues arising out of alleged fraud in the treaty, which in modern times is more aptly called 'fraud in the inducement or fraud in the procurement'. The allegations of the reply in this connection charge fraud by means of 'misrepresentation, concealment, coercion and duress.'

\* \* \*

"The remaining issue relates to the charge of coercion on the part of the defendants. Coercion of the character considered is in the nature of fraud, because it means the exercise

of such importunity and urgency of persuasion, or overpersuasion, as it is sometimes called, as to destroy the free agency of the party sought to be coerced, and to prompt him or her to do what is really against his or her will. In other words, it must be such as to take away the free agency of the party sought to be coerced and substitute the will of another in the place of his or her own. This is what is sometimes called moral coercion, and is practically synonymous with undue influence. Indeed, undue influence in order to be effective 'must amount to coercion or fraud'. Annotation 92 A. L. R. 790. See also 43 C. J. S. Influence p. 381, and *Pressly v. Kemp,* 16 S. C. 334, wherein the Court said 'there must be proof that the act was obtained by this coercion—by importunity which could not be resisted—'

\* \* \*

"Of course, every case involving a release depends on its own facts and circumstances, and hence some releases have been held valid, while others have been held invalid. Among the cases which might properly be considered as pertinent to some of the issues involved here is that of *Treadway v. Union Buffalo Mills Co.,* 84 S. C. 41, 65 S. E. 934, wherein it was held that evidence tending to show the poverty and necessitous condition of the releasor at the time of the execution of the release is competent on the issue as to whether the release was fairly obtained. Another case of interest is that of *Medlin v. Vanderbilt,* 133 S. C. 256, 130 S. E. 893, wherein it was held that the validity of a release of liability for injuries, signed when claimant and his wife were in dire straits, was properly submitted to the jury."

In view of the conflicting testimony as to the mental capacity of the respondent at the time he executed the release, and also because of the testimony showing the poverty and necessitous condition of the respondent, it was proper for the trial Judge to submit the issue of the validity of the release to the jury.

The appellant charges that the lower Court committed error in refusing to instruct the jury, even if the respondent

did not assent to the accord and satisfaction at the time of its execution, yet if he later ratified and confirmed it, he would be bound by it.

The testimony shows that the appellant issued his check to the respondent in the sum of $375.00. This check bears an "his mark" endorsement. This endorsement was witnessed by Minnie Jones and Mollie Kelly, relatives of the respondent. They both testified that they did not see the respondent endorse the check as aforesaid. The check was presented to the Bank and cashed by Verena Green, the wife of the respondent. She testified that she expended the entire $375.00 in behalf of the respondent. The respondent admitted that on Thursday following the execution of the release and the cashing of the check that his wife told him about receiving $375.00 from the appellant. The respondent was asked this question: "Didn't you tell Mr. Guy Grady that you and Mr. Sparks had settled your differences?" And he answered: "I might a did." The respondent also admitted that he had several conversations with the appellant after his return from the hospital. He also admitted that in these conversations he never told the appellant that he was unconscious at the time of the execution of the release. It also appears from the record that the respondent did not tender the consideration received for the release until the service of the answer of the appellant, which set up by way of special defense, the release in question.

In *Taylor v. Palmetto State Life Ins. Co.,* 196 S. C. 195, 12 S. E. (2d) 708, 710, we announced this rule: "Ordinarily, the consideration received for a release should be returned or tendered before an action is instituted, or contemporaneously with the institution thereof. *Brown v. Walker Lumber Co.,* 128 S. C. 161, 122 S. E. 670; *Harrison v. Southern R. Co.,* 131 S. C. 12, 127 S. E. 270."

We think there was sufficient evidence which required the trial Judge to submit to the jury the question of whether the respondent had ratified and confirmed the settlement made and the release given. Therefore,

the trial Judge should have appropriately instructed the jury upon this issue. His refusal to do so was error.

This Court, in the case of *Wilson v. Muehlberger,* 165 S. C. 137, 163 S. E. 125, 130, said:

"Where a release has been obtained, or an accord and satisfaction made without the knowledge and consent of one of the parties thereto or his authorized agent, it may, of course, become binding if ratified."

The record shows that the trial Judge permitted counsel for the respondent to examine the appellant and his witness, Bennie Hill, with reference to their collection of damages from Lockhart Power Company for personal injuries sustained by them.

The appellant asserts that this testimony was not relevant and that the Court should have sustained his objection thereto.

This testimony was not relevant to any issue in the case. This is particularly true as to the testimony elicited from the witness Bennie Hill. Whether he had instituted an action and recovered damages from the Lockhart Power Company could not affect any issue in this case.

The respondent asserts, insofar as the appellant is concerned, that this testimony was admissible on the ground that the action was one for punitive damages and it was proper to show the wealth of the appellant. We agree that where a plaintiff brings an action seeking punitive damages that the testimony as to the wealth of the defendant is proper. *Elms v. Southern Power Co.,* 79 S. C. 502, 60 S. E. 1110; *Charles v. Texas Co.,* 199 S. C. 156, 18 S. E. (2d) 719; *Calder v. Southern Ry.,* 89 S. C. 287, 71 S. E. 841; *Bowers v. Carolina Public Service Corp.,* 148 S. C. 161, 145 S. E. 790, 791.

However, in this case, we do not think it was proper to cross-examine the appellant as to a particular law suit in which he had been engaged. It would be

proper to cross examine him as to his wealth generally. In *Bowers v. Carolina Public Service Corp., supra,* it is said:

"In order that the punishment might not be excessive on the one hand, or inadequate on the other, evidentiary knowledge of the financial ability of the wrongdoer to pay is essential. *Calder v. Southern Railway,* 89 S. C. 287, 71 S. E. 841, Ann. Cas. 1913A, 894."

We think, therefore, that the trial Judge committed error in permitting the cross examination of the appellant and his witness, Bennie Hill, with respect to the collection of damages for personal injuries sustained by them.

The appellant tendered the testimony of one Joe Lott who viewed the scene of the wreck before the car of respondent was moved. After he had described the tire marks made by the car of the respondent, counsel for the appellant attempted to elicit from him his conclusion or opinion based upon this fact as to what caused the car of the respondent to skid. The trial Judge sustained an objection to this testimony. The appellant asserts that this was error. We do not think this proffered testimony was admissible. The opinion of a witness is not admissible where all the facts are capable of being clearly detailed so that the jury may form the correct conclusion therefrom. *McCown v. Muldrow,* 91 S. C. 523, 74 S. E. 386.

In the case of *Thompson v. South Carolina State Highway Dept.,* 224 S. C. 338, 79 S. E. (2d) 160, 163, we said:

"We have heretofore remarked, in at least one opinion, that the testimony of highway patrolmen should be limited, when they are not an eyewitness, to markings on the highway, etc., and it is for the jury to reach a conclusion concerning the issue which it is sought to be proven or rebutted thereby."

The appellant sought to introduce testimony by his witness, Bennie Hill, of his experience at the same location where respondent was injured, when he was driving a truck on a dry road and some other person pulled

into the highway from the same private driveway. We do not think this testimony was relevant to any issue in the case. It could have no probative value because the only identifying factor was that the place was substantially the' same.

The appellant has posed a number of exceptions which we have not discussed. We deem it unnecessary to pass upon such exceptions because the case must go back for a new trial for the errors we have pointed out herein. However, nothing we have said should be interpreted as indicating in any way our opinion as to the merits of the cause.

The judgment of the lower Court is reversed and this case remanded for a new trial.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.