1588

David W. BAXLEY, Jr. and June Baxley, Appellants v. Raymond ROSEN-
BLUM, M.D., Fletcher C. Derrick, Jr., M.D. and William C. Carter, III,
M.D., d/b/a Rosenblum, Derrick & Carter, and Raymond Rosenblum, In-
dividually, Respondents.

(400 S.E. (2d) 502)

Court of Appeals

*George J. Morris,* Charleston, *for appellants.*

*J. Rutledge Young, Jr.,* and *Stephen P. Groves, Young, Clement, Rivers & Tisdale,* Charleston, *for respondents.*

Heard Nov. 12, 1990.

Decided Jan. 7, 1991.

BELL, Judge:

This is an action in negligence for medical malpractice. David W. Baxley, Jr., himself a medical doctor, sued Raymond Rosenblum, Fletcher C. Derrick, Jr., and William C. Carter, III, all specialists in urology, who practice together as a partnership. Baxley sought damages for the defendants' alleged failure to diagnose and treat his cancer in a timely and proper manner. June Baxley, his wife, also sued for loss of consortium. The defendants answered denying any negligence on their part. They also raised the affirmative defenses of contributory negligence and assumption of the risk. The case was tried to a jury. At the close of Baxley's evidence, the court granted Carter's motion for a directed verdict. Baxley does not appeal that order. After all the evidence was presented, the trial judge sent the case to the jury for a general verdict. The jury found for Rosenblum and Derrick. Baxley appeals. We affirm.

Baxley and Rosenblum were medical school classmates. Baxley is a general practitioner; Rosenblum is a specialist in urology. Baxley became Rosenblum's patient in June, 1964.

In June, 1980, Baxley experienced painful, bloody urination. He consulted Rosenblum, who conducted a cytoscopic examination by inserting a tube through his urethra into his bladder. By observation, Rosenblum discovered an inflammation of the prostate urethral vesicle neck. He treated Baxley with medication. A follow up examination two weeks later showed a complete resolution of the problem. Baxley had no further symptoms after his treatment.

Baxley continued to consult Rosenblum for other routine matters until October 31, 1984, when he came to see him after experiencing two days of bloody urine. Rosenblum performed a cytoscopic examination which revealed a lesion on the right lateral wall of Baxley's bladder. He hospitalized Baxley for several tests, including multiple biopsies of the bladder. Based on Baxley's history of bloody urine and earlier cytoscopic examinations, Rosenblum's preoperative diagnosis was possible cancer of the bladder.

Rosenblum performed the biopsies and submitted them to the hospital pathology laboratory for examination. The pathology report diagnosed Baxley's condition as infection and in-

flammation of the bladder. The report indicated there was no evidence of cell abnormality, cancer, or any precancerous condition.

During the next two years, Baxley consulted Rosenblum from time to time when his symptoms recurred. On January 20, 1986, Baxley passed a strawberry sized blood clot in his urine. He took it on his own to a hospital pathology laboratory for examination. The pathology report indicated "degenerative inflammatory cells." There was no indication of cancer. Baxley did not report this incident to Rosenblum.

On April 25, 1986, Baxley saw Rosenblum after an episode of bloody urine. He reported he had experienced several episodes since he last saw Rosenblum. Rosenblum cytoscoped Baxley, observing an inflammatory area of the posterior wall of the bladder. A rectal examination revealed a severely tender prostate. Rosenblum told Baxley he thought he was having recurrent acute infection of the prostate with secondary infection of the bladder. He told Baxley to arrange his schedule so that he could go to the hospital for prostate surgery. Baxley understood he would continue to have problems if he did not have the surgery.

It is undisputed that Baxley refused to follow Rosenblum's advice. As a result, he continued to have painful, bloody urination. Starting in January, 1987, his symptoms became more frequent and did not respond to self treatment. Baxley did not report this change to Rosenblum. Instead, he waited almost a year from the time Rosenblum had ordered prostate surgery and then went to see Dr. Robert Pringle, a family practitioner and occupational medical specialist. He saw Pringle on five occasions from March 17, 1987, to May 5, 1987. During this period Baxley's symptoms worsened and failed to respond to Pringle's treatment. Urinalysis done for Pringle was negative, as it had been with Rosenblum. In May, Pringle referred Baxley to Dr. John Manos at the Medical University of South Carolina for further tests. Dr. Manos had cytology tests performed. The cytopathologist gave a diagnosis of "urine—transitional cell carcinoma."

After this diagnosis, Baxley returned to Rosenblum on May 19, 1987, over a year after he had last consulted him. Rosenblum ordered a new cytology test which indicated "suspicious for malignancy." He then ordered random multiple biopsies,

which were performed on May 26, 1987, and revealed multifocal carcinoma in situ. (Carcinoma in situ is an early stage of cancer limited to the top layers of the epithelium, the mucosa-like membrane that lines the inside of bodily organs and cavities.) There was evidence that Baxley's cancer did not occur until early 1987, a few months before he returned to Rosenblum in May.

Rosenblum conferred with Baxley and his wife. He first discussed the different forms of treatment available. He told Baxley the disease could be treated chemically, but he did not recommend it. He told him it could be treated with x-ray, but that was notoriously poor for carcinoma in situ. He told him the treatment of choice was total removal of the bladder, prostate, and seminal vesicles, which he recommended. Baxley knew what the surgery involved because he and Rosenblum had treated mutual patients who underwent the procedure.

Rosenblum and Baxley also discussed removing the urethra. Rosenblum stated there were two schools of thought: one is to remove the urethra totally and the other is not to remove it. He informed Baxley of the risks attendant to each alternative. Removing the bladder and prostate, but not the urethra would probably cause impotence, but there was a chance impotence would not occur. Removal of the bladder, the prostate, and the urethra would almost certainly lead to impotence. In Rosenblum's experience, one hundred percent of those who had the urethra removed were impotent. He then explained that if the urethra was not removed, he would test frozen sections of the urethra to make sure there was no cancer in it. He also explained that another reason to leave the urethra was to avoid complications from the surgery. To remove the urethra it is necessary to put the patient up in stirrups much like a woman who is delivering a baby. The use of stirrups increases the chances of pulmonary embolism. Removing the urethra later at a second operation decreases the complication rate.

Because Baxley expressed concern about the risk of impotence, Rosenblum also told him that if impotence resulted, it could be corrected by a penile prosthesis. Baxley was familiar with this procedure. Neither during this conference nor prior to surgery did Baxley or his wife express any objection to

leaving the urethra in. Baxley executed a form acknowledging that he understood the diagnosis, the surgical procedure, the risks and complications which might occur and that he consented to the surgery.

Rosenblum, assisted by Derrick, performed the surgery on May 29, 1987. He removed the bladder, the prostate, and the seminal vesicles. He did not remove the urethra, as the pathology report indicated it was not cancerous. The report did note the presence of dysplasia (abnormal cell formation).

In connection with removing the bladder, Rosenblum performed a surgical procedure called an ileal conduit to reroute the urine. An ileal conduit entails severing the small intestines and putting them back together. Rosenblum did not insert a nasogastric tube during the operation. After the operation, when Baxley complained of abdominal pain, Rosenblum ordered insertion of the tube on June 1, 1987. Baxley inserted the tube on his own when he became dissatisfied with the initial insertion by a nurse. Thereafter, he pulled out the tube on his own because it irritated his nose. Rosenblum had not ordered the tube removed.

On November 11, 1987, Baxley underwent surgery to have adhesions on which scar tissue had formed removed from his small intestines because they were causing an obstruction. Adhesions are an accepted complication of an ileal conduit. Dr. Rittenbury at the Medical University performed the surgery.

In December, 1987, routine medical follow up of Baxley's surgeries revealed cancer in his urethra. A Dr. Kellett removed the urethra. From the time his urethra was removed until the time of trial, Baxley was free from cancer.

Baxley's theory at trial was that Rosenblum failed to diagnose and treat him correctly. He claimed that correct diagnosis would have revealed the cancer earlier so that it could be treated chemically rather than surgically. He also claimed failure to remove the urethra in May, 1987, caused him to undergo unnecessary surgery in December, 1987. Finally, he claimed the ileal conduit was improperly done without insertion of a nasogastric tube during or after surgery, causing unnecessary stress on the bowel which had to be corrected by surgery in November, 1987.

Baxley raises three main issues on appeal: (1) did the court err in refusing to direct a verdict in his favor on the defenses

of contributory negligence and assumption of the risk; (2) did the court err in denying Baxley's motion to amend his pleadings to raise the issue of "informed consent" based on evidence introduced during the trial; and (3) did the court err in refusing Baxley's request to submit the case to the jury for special verdicts on his separate allegations of negligence. He does not expressly challenge the sufficiency of the evidence to support the jury's verdict for Rosenblum and Derrick.

## I.

When ruling on a motion for a directed verdict, the trial judge must view the evidence in the light most favorable to the party opposing the motion. *Moore v. Levitre*, 294 S.C. 453, 365 S.E. (2d) 730 (1988). If the evidence supports more than one reasonable inference with respect to a claim or defense, the judge must deny the motion and submit the case to the jury. *Id.*

Contributory negligence is a lack of ordinary care on the part of a person injured by the negligence of another which combines and contributes to the injury as a proximate cause without which the injury would not have occurred. *South Carolina Insurance Co. v. James C. Greene & Co.*, 290 S.C. 171, 348 S.E. (2d) 617 (Ct. App. 1986). A plaintiff who fails to exercise ordinary care for his own welfare is the author of his own injury in the eyes of the law. *Id.* Normally the question of contributory negligence is a question of fact for the jury. *Wallace v. Owens-Illinois, Inc.*, ___ S.C. ___, 389 S.E. (2d) 155 (Ct. App. 1989), *cert. denied*, Davis Adv. Sh. No. 19 (Sept. 22, 1990).

In this case, there was evidence that Baxley's own negligent conduct contributed substantially to the injuries he complains of. Among other things, Baxley did not alert Rosenblum that he passed a strawberry sized blood clot in January, 1986. When Rosenblum recommended prostate surgery in May, 1986, Baxley ignored his doctor's advice and stopped seeing him for over a year. There was evidence that if Baxley had followed the advice, Rosenblum would have routinely examined his bladder and could have discovered any early signs of cancer if they existed at that time. When his symptoms worsened and did not respond to self treatment in January, 1987, he neither sought treatment nor informed Rosenblum of

the problem. When he finally went to a doctor in March, 1987, instead of consulting Rosenblum, a specialist in diagnosing and treating his type of symptoms and one who knew his personal medical history, Baxley went to a nonspecialist, Dr. Pringle. Pringle was unable to give him a definitive diagnosis and he did not respond to Pringle's treatment. Baxley knew he had a chronic medical problem. As a doctor himself, he also knew that many chronic diseases are progressive, that a patient's delay in seeing a physician can prevent early diagnosis, and that delay in diagnosis can materially alter the chances for successful treatment by conservative means. Given this and other evidence, a reasonable jury could have found Baxley's delay was a critical factor creating the need for the multiple surgeries he later endured. In the circumstances, the trial judge had no alternative but to submit the defense of contributory negligence to the jury.

Assumption of the risk is the deliberate and voluntary choice to assume a known risk. *Wallace*, ___S.C. at ___, 389 S.E. (2d) at 155. The doctrine of assumption of the risk embodies the principle that one should not be permitted knowingly and voluntarily to incur an obvious risk of harm and then hold another person responsible for his injury. *Id.* The defense of assumption of the risk ordinarily presents a question of fact for the jury. *Id.*

In this case, the evidence permitted a reasonable inference that Baxley voluntarily chose to incur known medical risks. In 1984, Rosenblum made a preoperative diagnosis of cancer of the bladder. From that time forward, if not before, Baxley knew a person with his symptoms is at risk for cancer. He also knew a patient takes a serious health risk when he withholds information about his symptoms and their progression, and when he ignores his doctor's recommendations for treatment. We have already detailed evidence showing that Baxley did both of these things. He knew there was a risk of complications from the May 1987 surgery that would require further treatment. In each instance, he made a voluntary decision to take the risk. The fact that he was under stress or may have been motivated by an understandable human fear of losing his potency does not mean he did not make his own choices. On the basis of this evidence, the trial judge had a duty to submit the defense of assumption of the risk to the jury.

Baxley separately argues that the defenses of contributory negligence and assumption of the risk cannot apply to his claims involving insertion of the nasogastric tube and removal of his urethra. He maintains this is so because these two claims are not based on the same facts as his claim for negligent diagnosis and treatment prior to the initial surgery. This argument is clearly without merit.

Baxley's own theory of the case was that the subsequent surgeries on his intestines and his urethra resulted directly from the earlier lack of proper diagnosis and treatment. Indeed, he realleged all of the facts underlying his first claim in his second and third claims. Moreover, there were separate facts from which the jury could have found either defense as to the subsequent surgeries. Among other things, the evidence showed that Rosenblum ordered the nasogastric tube inserted after the May surgery; but Baxley himself removed it without an order from Rosenblum. It could also be inferred that cancer probably would not have developed in the urethra but for Baxley's role in preventing early treatment. This is quite apart from evidence that Baxley had no cancer in his urethra at the time of the May surgery and that he never had an intestinal leakage from pressure caused by the ileal conduit, as he claimed. In fine, Baxley's own theory of causation for the two later surgeries rested on facts related to all of his allegations of negligence. Thus, the affirmative defenses applied to each of the three injuries he alleged.

## II.

At the close of the evidence Baxley moved to amend his pleadings to allege that Rosenblum breached a duty to obtain Baxley's informed consent to the May surgery. The trial judge denied the motion. Baxley excepts to that ruling.

Under our decision in *Hook v. Rothstein*, 281 S.C. 541, 316 S.E. (2d) 690 (Ct. App.), *cert. dismissed*, 283 S.C. 64, 320 S.E. (2d) 35 (1984), the plaintiff must prove lack of informed consent by expert medical testimony establishing: (1) the professional standard for disclosure in the defendant's branch of medicine; and (2) the defendant's breach of that standard in the circumstances of the particular case.

During trial, Baxley did not put up an expert witness on the issue of informed consent. Therefore, there was no evidence to warrant a post trial amendment of his complaint to raise the issue. For the same reason, the judge properly refused Baxley's request to charge the jury on informed consent. *Mouzon v. Moore & Stewart, Inc.*, 282 S.C. 233, 317 S.E. (2d) 756 (Ct. App. 1984) (jury charge must be supported by the pleadings and evidence).

### III.

Finally, Baxley excepts to the judge's decision to submit the case to the jury for a general verdict rather than special verdicts. In essence, he asserts his claims arose out of three separate surgeries giving rise to three different "actions" which were "consolidated" in one trial.

The record simply does not support Baxley's position. Rosenblum did not perform the second and third surgeries; and Baxley has never alleged that the later surgeries were negligently performed. Neither does he claim that the later surgeries gave rise to distinct and separate injuries apart from Rosenblum's initial negligence. Instead, he claims the two later surgeries were *themselves* elements of damage flowing from Rosenblum's prior negligent diagnosis and treatment in the first surgery. Baxley's specifications of negligence regarding the second and third surgeries were all based on the facts relating to his course of treatment under Rosenblum. Moreover, he alleged that all three surgeries would have been unnecessary, but for Rosenblum's negligent failure to diagnose his cancer properly. Thus, common facts undergirded all three claims.

As part of his general supervisory authority over the conduct of litigation, the trial judge is given discretion to determine how the case will be submitted to the jury. Rule 49, SCRCP; *Harper v. Ethridge*, 290 S.C. 112, 348 S.E. (2d) 374 (Ct. App. 1986). In this case, the trial judge determined that Baxley's three "causes of action" constituted particular specifications of negligence flowing from a single course of diagnosis and treatment. The separate elements of damage alleged also arose from a common course of events relating to all three claims, as Baxley's own pleadings and argu-

ments demonstrate. On this basis, the judge decided, correctly in our opinion, to submit the case for a general verdict. The general verdict form allowed the jury to return a verdict for Baxley if it found any one of his claims to be well founded. In any event, the judge's decision was well within his discretion.

For the reasons stated, we find no merit to Baxley's exceptions. The judgment of the circuit court is affirmed.

Affirmed.

SHAW and CURETON, JJ., concur.