2210

Stephen SINGLETARY, Respondent v. SOUTH CAROLINA DEPARTMENT OF EDUCATION and Rose W. Middleton, Defendants, of whom the South Carolina Department of Education is Appellant.

(447 S.E. (2d) 231)

Court of Appeals

154

*James A. Stuckey, Jr.* and *David H. Zoellner,* both of *Stuckey & Kobrovsky,* Charleston, *for appellant.*

*John B. Williams* and *George B. Bishop, Jr.,* Moncks Corner, *for respondent.*

Heard May 10, 1994.

Decided July 25, 1994; Reh. Den. Aug. 31, 1994.

SHAW, Judge:

Stephen Singletary (the Plaintiff) brought an action against the South Carolina Department of Education (the Department) for injuries he received when he collided with a stalled school bus. The jury awarded the Plaintiff $1,500,000 actual damages, which the trial judge reduced to the statutory cap of $250,000 pursuant to the South Carolina Tort Claims Act. The trial judge denied the remaining post-verdict motions and the Department appeals. We affirm.

In the early morning of January 2, 1991, the Plaintiff drove his pickup truck into and under the rear of a stopped school bus on a rural highway in Berkeley County. He was severely injured, and brought an action against the Department to recover damages for his injuries. The Department raised defenses of (1) contributory negligence, (2) assumption of the risk, (3) sudden emergency, and (4) that the Department was exempted from liability under the South Carolina Tort Claims Act.

Viewing the evidence most favorably for the Plaintiff, the testimony reveals the following facts. The bus had stopped on the highway to pick up students. When the driver began to start up the bus, it shook and choked down. While the driver was trying to restart the bus, the Plaintiff ran into the bus's rear.

The bus driver, Rose Middleton, testified the bus could reach a maximum speed of 35 miles per hour and that when she was about two-tenths of a mile from her first stop (where the accident occurred) she noticed the headlights looked dim. She had plenty of space to pull over to the side of the road as a precautionary measure, but did not feel she had any reason to do so. Middleton stated "everything went dead" and the bus "cut off" as it stood on the highway. Middleton stated this had happened before. She testified the accident occurred in a matter of seconds after the bus cut off.

Harold Staley, the supervisor of the Berkeley County School Bus Maintenance Shop, testified normally the headlights and brake lights on the bus remained on so long as the door remained open and if the battery was not dead. Staley testified the battery on the bus was not dead and it cranked up after the accident. Staley testified the headlight switch and all warning light switches were in the "off" position.

Staley also testified the bus would not start unless the transmission was in neutral. Christopher Wilkinson, one of the student passengers, testified the bus was not in neutral at the time of the accident. Wilkinson testified that in the past the bus would not crank. He also testified the driver asked him to check the lights after the bus stopped and he walked to the back but saw no lights on. He estimated the time between the lights going off and the collision to be "less than two minutes."

Charles Singletary, who happened on the accident, testified he observed skid marks from the back of the Plaintiff's truck which were about 20 feet in length. He also testified there was a light fog that morning and the fog was "kind of heavy" at the scene of the accident. He stated he had his headlights on but was unable to see the bus until he "got right on top [of] it." He testified he saw no lights on the bus, either inside or outside, front or rear.

The Plaintiff testified he had his headlights on at the time of

the collision. He had to keep his lights on low beam due to the fog. The Plaintiff saw no lights illuminated on the bus just prior to the collision.

## I.

The Department first argues the trial judge erred in failing to grant the Department a directed verdict at the conclusion of the evidence. The Department claims the only reasonable inference was that the Department had used due care under the circumstances. The thrust of the Department's argument is that Middleton faced a sudden emergency as a matter of law. We disagree.

In ruling on a motion for directed verdict, the trial court is required to view the evidence and the inferences which can reasonably be drawn from the evidence in the light most favorable to the party opposing the motion. *Smith v. Wal-Mart Stores, Inc.*, — S.C. —, 442 S.E. (2d) 606 (S.C. Sup. Ct. 1994) (Davis Adv. Sh. No. 7 at 45). The breach of a duty of due care is ordinarily a question of fact. *Estate of Cantrell by Cantrell v. Green*, 302 S.C. 557, 397 S.E. (2d) 777 (Ct. App. 1990).

Where a motorist is suddenly placed in an emergency situation, through no fault of his own, and is compelled to act instantly to avoid a collision, he is not negligent if he makes a choice that a person of ordinary judgment might make if placed in the same emergency situation. *Alston v. Blue Ridge Transfer Co.*, 308 S.C. 292, 417 S.E. (2d) 631 (Ct. App. 1992). The question of whether a sudden emergency existed is normally a question for the jury, but becomes a question for the court where the facts show no actionable negligence on the part of the defendant. *Id. See also Green v. Sparks*, 232 S.C. 414, 102 S.E. (2d) 435 (1958) (it was for the jury to determine whether in the sudden emergency which confronted the plaintiff, he exercised ordinary care and judgment in his actions).

Viewing the evidence in the light most favorable to the Plaintiff, we find the question of whether there was actionable negligence on the Department's part was a matter for the jury. Accordingly, the trial judge did not err in denying the Department's directed verdict motion on its claim of "sudden emergency."

## II.

The Department next argues the trial judge erred in ■ failing to grant the Department a directed verdict on the issue of contributory negligence[1] regarding whether the Plaintiff was driving too fast for conditions and either failed to keep a proper lookout or could not stop within the range of his headlights. We disagree.

In *Mishoe v. DNP Amusement, Inc.*, 307 S.C. 251, 414 S.E. (2d) 584 (Ct. App. 1991), this Court stated:

> Contributory negligence, when applicable, is a lack of ordinary care on the part of the person injured by the negligence of another, which combines and concurs with that other's negligence and contributes to the injury as a proximate cause without which the injury would not have occurred. The doctrine of contributory negligence embodies the principle that an injured person should not be permitted to ask from others greater care than he himself exercises for his own welfare. If in the exercise of ordinary care, the plaintiff might have avoided the consequences of the defendant's negligence, he is the author of his own injury in the eyes of the law.
>
> Generally, contributory negligence is a question for determination by the jury. But when the evidence admits only one reasonable inference, it becomes a matter of law for the determination of the court. And, if a plaintiff has knowledge of a dangerous situation or condition and voluntarily steps into that dangerous situation, he is as a matter of law contributorily negligent.

*Gruber v. Santee Frozen Foods, Inc.*, 309 S.C. 13, 419 S.E. (2d) 795 (S.C. Ct. App. 1992) (Davis Adv. Sh. No. 14 at 37). *See also Baxley v. Rosenblum*, 303 S.C. 340, 400 S.E. (2d) 502 (Ct. App. 1991) (a plaintiff who fails to exercise ordinary care for his own welfare is the author of his own injury in the eyes of the law; normally the question is for the jury).

Viewing the evidence in the light most favorable to the Plaintiff, we do not find the evidence supports a finding the

---

[1]The accident in this case occurred prior to the effective date of *Nelson v. Concrete Supply Co.*, 303 S.C. 243, 399 S.E. (2d) 783 (1991) (contributory negligence has been abolished in favor of comparative negligence for cases filed on or after July 1, 1991).

Plaintiff was guilty of contributory negligence as a matter of law. Accordingly, the trial judge correctly denied the Department's directed verdict motion on this basis.

### III.

The Department also argues the trial judge erred in refusing the Department's request to charge the jury concerning the defense of assumption of the risk. We disagree.

The law declared by the court must be the current and correct law. *State v. Adams*, 277 S.C. 115, 283 S.E. (2d) 582 (1981). Jury instructions should be confined to the issues made by the pleadings and supported by the evidence. *Baker v. Weaver*, 279 S.C. 479, 309 S.E. (2d) 770 (Ct. App. 1983). Ordinarily, a trial court has the duty to give a requested instruction that correctly states the law applicable to the issues and the evidence. *Sherer v. James*, 286 S.C. 304, 334 S.E. (2d) 283 (Ct. App. 1985), *rev'd on other grounds*, 290 S.C. 404, 351 S.E. (2d) 148 (1986). To warrant reversal for refusal to give a requested instruction, the refusal must have been erroneous and prejudicial. *Id.*

In *Strange v. SC Dept. of Highways and Public Transportation*, 307 S.C. 161, 414 S.E. (2d) 138 (S.C. Sup. Ct. 1992) (Davis Adv. Sh. No. 4 at 13, 15), the Supreme Court stated:

> Assumption of the risk requires an intelligent and deliberate choice to assume a known risk. A plaintiff is said to have assumed the risk as a matter of law when it appears that the plaintiff freely and voluntarily exposed himself to a known danger and understood and appreciated the danger. Assumption of the risk, like contributory negligence, generally is a question of fact to be determined by the jury.

*See also Baxley v. Rosenblum* (assumption of the risk embodies the principle that one should not be permitted knowingly and voluntarily to incur an obvious risk of harm and then hold another person responsible for his injury; the defense ordinarily presents a jury question).

There is no evidence in the record the Plaintiff made an intelligent and deliberate choice to assume a known risk, that is, colliding with a stalled school bus on a foggy road. There is no

evidence the Plaintiff exposed himself to a known danger and, understanding and appreciating that danger, chose to go forward. We find no error in the trial judge's refusal to charge assumption of the risk's under the facts of this case.

## IV.

The Department argues the trial judge erred in failing to grant the Department a directed verdict on the ground that as a governmental entity, it is not liable for the "absence . . . or malfunction of any . . . signal, warning device, [or] illumination device . . . unless the . . . malfunction is not corrected by the . . . governmental entity . . . within a reasonable time after actual or constructive notice," pursuant to S.C. Code Ann. § 15-78-60(15) (Supp. 1993). We disagree.

Section 15-78-60 provides in pertinent part:

The governmental entity is not liable for a loss resulting from:

\* \* \* \* \* \* \*

(15) absence, condition, or malfunction of any sign, signal, warning device, illumination device, guardrail, or median unless the absence, condition or malfunction is not corrected by the governmental entity responsible for its maintenance within a reasonable time after actual or constructive notice. Government entities are not liable for the removal or destruction of signs, signals, warning devices, guardrails, or median barriers by third parties except on failure of the political subdivison to correct them within a reasonable time after actual or constructive notice. Nothing in this item gives rise to liability arising from a failure of any governmental entity to initially place any of the above signs, signals, warning devices, guardrails, or median barriers when the failure is the result of a discretionary act of the governmental entity. *The signs, signals, warning devices, guardrails, or median barriers referred to in this item are those used in connection with hazards normally connected with the use of public ways* and do not apply to the duty to warn of special conditions such as excavations, dredging, or public way construction. Governmental entities are not liable for

the design of highways and other public ways. Governmental entities are not liable for loss on public ways under construction when the entity is protected by an indemnity bond. Governmental entities responsible for maintaining highways, roads, streets, causeways, bridges, or other public ways are not liable for loss arising out of a defect or a condition in, on, under, or overhanging a highway, road, street, causeway, bridge, or other public way caused by a third party unless the defect or condition is not corrected within a reasonable time after actual or constructive notice. (Emphasis added.)

Our primary concern in interpreting a statute is to ascertain and give effect to the intention of the legislature. *Holley v. Mount Vernon Mills, Inc.*, — S.C. —, 440 S.E. (2d) 373 (S.C. 1994); *Dickerson v. Coca-Cola Bottling Co. Affiliated Ltd.*, — S.C. —, 440 S.E. (2d) 359 (S.C. 1994). When the legislature uses words of particular and specific meaning followed by general words, the general words are construed to embrace only persons or things of the same general kind or class as those enumerated. *Sheppard v. The City of Orangeburg*, — S.C. —, 442 S.E. (2d) 601 (S.C. 1994). All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute. *State v. Thrift*, — S.C. —, 440 S.E. (2d) 341 (S.C. 1994); *Kiriakides v. United Artists Communications, Inc.*, — S.C. —, 440 S.E. (2d) 364 (S.C. 1994). However plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the legislature or would defeat the plain legislative intention. *Kiriakides v. United Artists Communications, Inc.* If possible, the court will construe a statute so as to escape the absurdity and carry the intention into effect. *Id.*

With these principles in mind, we turn to the language of § 15-78-60(15). The "sign, signal, warning device, illumination device" referred to in the statute are "those used in connection with hazards normally connected with the use of public ways," that is, warning devices used on the roadway, not on

motor vehicles. This is apparent from the statute's provision that "[n]othing in this item gives rise to liability arising from a failure of any governmental entity to *initially place* any of the above signs, signals, warning devices, guardrails, or median barriers when the failure is the result of a discretionary act of the governmental entity." It would be absurd to interpret the statute to contemplate that the government would have discretion to fail to initially place illumination or warning devices on school bus which travels the public highways.

The intention of the legislature must be gleaned from the entire section and not simply clauses taken out of context. When section 15-78-60(15) is read in its entirety, it is clear the legislature intended to limit the government's liability when a sign, signal, warning device, illumination device, guardrail, or median used in connection with hazards normally connected with the use of public ways, is damaged or malfunctions, and the government has not had a reasonable opportunity to repair or replace it, or when the government, in its discretion, did not initially place the device upon the public way. Hence, this exception does not apply to the illumination or signals required to be on a school bus before it travels the public roadways. *See* S.C. Code Ann. § 56-5-2770(b) (1991) (requiring every school bus to be equipped with red or red and amber vision signals which the driver may activate when the bus is stopped or prepared to stop on the highway to pick up or discharge students); S.C. Code Ann. § 56-5-4700(b), (d) (1991) (requiring every school bus to have, in addition to other equipment and distinctive markings required by Chapter 5 of Title 56, signal lamps mounted as high and as widely spaced laterally as practicable, and capable of displaying to the front and rear two alternately flashing red lights located at the same level which have sufficient intensity to be visible at 500 feet in normal sunlight). Accordingly, we find no error in the trial judge's refusal to grant the Department a directed verdict based upon this statute.

## V.

Finally, the Department argues the trial judge erred in refusing to charge the language of § 15-78-60(15). Because we have determined that the statute does not apply to motor vehicle lights and equipment required by statute, we find no error in the trial judge's refusal to charge § 15-78-60(15).

For the foregoing reasons, the judgment is

Affirmed.

HOWELL, C.J., and CURETON, J., concur.