486 S.E.2d 507

**John David SPAHN, Appellant,**

v.

**TOWN OF PORT ROYAL, Respondent.**

**No. 2669.**

Court of Appeals of South Carolina.

Submitted April 8, 1997.

Decided June 2, 1997.

Certiorari Granted July 10, 1997.

---

Daniel R. Denton, Beaufort, for appellant.

Charles E. Carpenter, Jr., Nina Reid Mack, both of Richardson, Plowden, Grier & Howser, Columbia; and Robert W. Achurch, III, of Howell, Gibson & Hughes, Beaufort, for respondent.

HEARN, Judge.

John David Spahn brought this negligence action against the Town of Port Royal. The jury returned a verdict in favor of Port Royal. Spahn appeals, arguing the court erred in refusing to strike the defense of assumption of risk and charging the jury that this defense would bar the plaintiff from recovery, refusing to strike the defense of sudden emergency, and refusing to instruct the jury on the law of last clear chance. We affirm.[1]

### Facts

At 10:00 p.m. on the evening of July 19, 1992, Spahn and his brother, Bobby, were driving home on Highway 802 after a day of fishing. They tied their green aluminum johnboat to the roof of Bobby's car in an upright position, placed their fishing gear in the boat, and tied the boat to the front and rear

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

bumper of the car using nylon rope. Shortly after passing a van driven by Robin Spinks, the boat came untied and fell off the vehicle, spilling the fishing gear into the road. Spinks switched lanes to avoid the debris and hit the johnboat, causing it to skid across the highway. The boat landed diagonally in the road, with half of the boat resting in the median and half resting in the roadway. Spahn and his brother immediately pulled their car off the road and got out of the car to retrieve the boat from the road.

Officer Griffith, of the Town of Port Royal, was driving his patrol car down the highway in the opposite direction. Spahn and Bobby saw the headlights from Officer Griffith's car, but believed they had time to retrieve the boat. They picked up the boat and attempted to move it into the median. As Officer Griffith approached, he saw Spahn's car parked in an unusual manner and saw debris in the road, but did not see the boat. Spahn was still holding his end of the boat in the road when the bumper of Griffith's patrol car grazed the boat, breaking Spahn's leg.

Spahn brought a negligence action against the Town of Port Royal alleging negligence on the part of Griffith in failing to maintain a proper lookout, to keep his vehicle under control, to observe a pedestrian and objects in the road, and to apply his brakes. Spahn also alleged the last clear chance doctrine. Port Royal alleged Spahn's negligence caused the accident or was greater than any negligence on the part of Griffith. Port Royal also alleged assumption of risk and sudden emergency. The jury returned a verdict in favor of Port Royal.

### I.

Spahn first argues the trial judge erred in refusing to strike the defense of assumption of risk and charging the jury that such a defense, if proven, would bar Spahn from recovery. Spahn asserts the affirmative defense of assumption of risk is merged into the doctrine of contributory negligence under the principles of comparative negligence, and thus should no longer act as a complete defense in a negligence case. We hold

Spahn did not preserve this issue for appellate review.[2]

At the trial court level, Spahn argued only that assumption of risk was not applicable to the facts of this case. Spahn did not argue that with the adoption of comparative negligence, the doctrine of assumption of risk no longer remains a complete defense.

■ An issue may not be raised for the first time on appeal, but must have been raised to the trial judge and ruled on to be preserved for appellate review. Issues not raised in the trial court will not be considered on appeal. *Hendrix v. Eastern Distribution, Inc.*, 320 S.C. 218, 464 S.E.2d 112 (1995).

■ Spahn also argues the trial court erred in refusing his motion to strike because assumption of risk does not apply to the facts of this case. We disagree. Assumption of risk is the deliberate and voluntary choice to assume a known risk. *Baxley v. Rosenblum*, 303 S.C. 340, 347, 400 S.E.2d 502, 507 (Ct.App.1991). "The doctrine of assumption of the risk embodies the principle that one should not be permitted knowingly and voluntarily to incur an obvious risk of harm and then hold another person responsible for his injury." *Id.* The defense of assumption of risk ordinarily presents a question of fact for the jury. *Id.*

In the present case, Spahn admitted he saw Officer Griffith's car approaching him, yet chose to remain standing in the dark roadway. Thus, there was sufficient evidence to submit the defense of assumption of risk to the jury.

## II.

Spahn next argues the trial judge erred in refusing Spahn's motion to strike the defense of sudden emergency and charging the jury on the law of this defense. Spahn further argues the judge should not have charged sudden emergency without

---

**2.** In the recent case of *Davenport v. Cotton Hope Plantation*, 325 S.C. 507, 482 S.E.2d 569 (Ct.App.1997), a majority of this court, sitting *en banc*, held that with the adoption of comparative negligence, assumption of risk is no longer a complete defense to a negligence claim. Rather, assumption of risk is to be treated as another factor of comparative negligence and not as an absolute bar to recovery.

also charging the law on prior and remote cause and intervening negligence.

Spahn first argues an instruction on sudden emergency should not have been given because it was not supported by the evidence. We disagree.

In defining sudden emergency, this court stated, "Where a motorist is suddenly placed in an emergency situation, through no fault of his own, and is compelled to act instantly to avoid a collision, he is not negligent if he makes a choice that a person of ordinary judgment might make if placed in the same emergency situation." *Singletary v. South Carolina Dep't of Educ.*, 316 S.C. 153, 157, 447 S.E.2d 231, 233 (Ct.App.1994). Thus, sudden emergency is a doctrine that defines the standard of care required of a defendant in an emergency situation.

In the present case, Officer Griffith testified that as he approached the area where the accident occurred, he saw Spahn's car in an unusual position and saw debris on the road. He further testified he thought he had arrived upon the scene of an accident and was looking at the car to determine whether there had been an accident. He then saw in front of him an object, which he struck almost immediately. He testified he was afraid to veer out of the object's path for fear he would hit a car beside or behind him. It was appropriate for the trial judge to charge the jury to consider the Officer's actions within the context of this emergency situation.

Spahn next argues the sudden emergency doctrine should not have been charged because the adoption of comparative negligence in South Carolina has rendered such an instruction inappropriate. We find this issue is not preserved for our review.

In addressing this issue at trial, Spahn's counsel argued only that sudden emergency was not applicable to the facts of this case. He did not argue sudden emergency is no longer an appropriate instruction after our adoption of comparative negligence. Because this issue was not raised at the trial court level, nor ruled on by the trial judge, we may not address it for the first time on appeal. *Hendrix v. Eastern Distribution, Inc.*, 320 S.C. 218, 464 S.E.2d 112 (1995).

█ Spahn also argues the trial judge erred in not charging the jury on prior and remote cause and intervening negligence along with sudden emergency. We find the judge properly instructed the jury on causation. A separate instruction on prior and remote cause was, therefore, unnecessary.

## III.

█ Finally, Spahn argues the trial judge erred in refusing to instruct the jury on the law of last clear chance. At trial, Port Royal argued the doctrine of last clear chance was subsumed by comparative negligence and is no longer a separate doctrine. The trial judge agreed and refused to charge the doctrine of last clear chance. We agree with the trial judge's ruling, finding the doctrine of last clear chance has been subsumed under our state's comparative negligence scheme.

The doctrine of last clear chance can afford a plaintiff who has negligently subjected himself to a risk of harm the opportunity to recover when the defendant discovers or could have discovered the plaintiff's peril had he exercised due diligence, and thereafter fails to exercise reasonable care to avoid injuring the plaintiff. *Rothrock v. Copeland,* 305 S.C. 402, 405, 409 S.E.2d 366, 368 (1991). The doctrine applies only if the defendant discovers that a negligent plaintiff is in a predicament from which he may not extricate himself and the defendant has an opportunity to avoid the injury in spite of the conduct of the plaintiff. *Id.*

Historically, the last clear chance doctrine presupposes both parties' actions were the cause of the accident, but the contributory negligence of the plaintiff is excused because the defendant had the last opportunity to avoid the accident but failed to do so. Guido Calabresi & Jeffrey O. Cooper, *New Directions in Tort Law,* 30 Val.U.L.Rev. 859, 873 (1996). In other words, a plaintiff who would otherwise be completely barred from recovering because of his own contributory negligence is able to recover for the negligent action of the defendant.

The doctrine of last clear chance is often rationalized as a rule of proximate cause. Under this reasoning, where the defendant has the last chance to avoid the accident, his act and

not the plaintiff's prior negligence is the "proximate cause" of the accident. Victor E. Schwartz, *Comparative Negligence* § 7–1(a), at 152 (3d ed. 1994). However, the overwhelming number of writers on last clear chance have criticized this rationale and recognized that the doctrine more likely survived simply to counter the harsh effects of contributory negligence.[3] As stated in *Prosser and Keeton on the Law of Torts:*

> In such a case the negligence of the plaintiff undoubtedly has been a cause, and a substantial and important one, of his own damage, and it cannot be said that injury through the defendant's negligence was not fully within the risk which the plaintiff has created. If the injury should be to a third person, such as a passenger in the defendant's vehicle, the plaintiff's negligence would clearly be recognized as a responsible cause, and it is an utterly artificial distinction which applies any other rule when the plaintiff himself is injured.

Keeton et al., *supra* note 3, § 66, at 463.

Moreover, application of the doctrine has resulted in enormous confusion among the states, as well as within South Carolina. *See Langley v. Boyter,* 284 S.C. 162, 169, 325 S.E.2d 550, 554 (Ct.App.1984), *quashed on procedural grounds,* 286 S.C. 85, 332 S.E.2d 100 (1985);[4] *see also* Keeton et al., *supra* note 3, § 66, at 464. Virtually every jurisdiction which has adopted the doctrine has a different variation or

---

**3.** *See, e.g.,* Calabresi & Cooper, *supra,* at 872 ("The doctrine of last clear chance, which ameliorated the harshness of the all-or-nothing contributory negligence rule, typically disappears under comparative negligence."); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 66, at 464 (5th ed. 1984) ("The real explanation [for the survival of last clear chance] would seem to be a fundamental dislike for the harshness of the contributory negligence defense."); Schwartz, *supra,* § 7–1(b), at 152–53 ("The overwhelming number of writers on last clear chance, and some courts, state that the purpose of the doctrine is simply to limit the effect of the contributory negligence defense. In point of fact, this 'benefit' may have caused last clear chance to survive even though it has always lacked a solid rationale and is awkward to apply.").

**4.** In *Nelson v. Concrete Supply Co.,* 303 S.C. 243, 399 S.E.2d 783 (1991), the supreme court referred the bench and bar to *Langley* for "an exhaustive analytical discussion of the history and merits of comparative negligence."

application of last clear chance. Keeton et al., *supra* note 4, § 66, at 464.

The doctrine of last clear chance can have a dramatic effect when applied in states with a comparative negligence scheme. If last clear chance is applied, the plaintiff avoids any apportionment of his damages and recovers a windfall, even if his negligence exceeds the defendant's. Shwartz, *supra*, § 7–2, at 155. For this reason, many states that have adopted comparative negligence have abolished last clear chance, finding that it would seriously restrain the principles of comparative negligence because it would sharply reduce the number of cases in which a comparative apportionment could be accomplished. Schwartz, *supra*, § 7–2(e), at 161.[5]

We agree with those jurisdictions which have abolished last clear chance as a separate doctrine and hold that last clear chance is subsumed under our state's comparative negligence scheme. "To give continued life to that principle would defeat the very purpose of the comparative negligence rule—the apportionment of damages according to the degree of mutual fault." *Kaatz v. Alaska*, 540 P.2d 1037, 1050 (Alaska 1975). The factors previously considered in determining last clear chance—the degree of plaintiff's negligence, its remoteness in time, the degree of defendant's negligence, defendant's awareness of plaintiff's peril, defendant's opportunity to avoid the accident and failure to do so—are inherent in a comparative negligence analysis without resort to a separate legal doctrine

---

5. *See, e.g., Kaatz v. State*, 540 P.2d 1037, 1050 (Alaska 1975); *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226, 1242 (1975); *Burns v. Ottati*, 513 P.2d 469, 472 (Colo.Ct.App.1973); *Hoffman v. Jones*, 280 So.2d 431, 438 (Fla.1973); *Alvis v. Ribar*, 85 Ill.2d 1, 52 Ill.Dec. 23, 421 N.E.2d 886, 898 (1981); *Bokhoven v. Klinker*, 474 N.W.2d 553, 556–57 (Iowa 1991); *Kennedy v. Hageman*, 704 S.W.2d 656, 658 (Ky.Ct.App.1985); *Cushman v. Perkins*, 245 A.2d 846, 850–51 (Me.1968); *Petrove v. Grand Trunk W. R.R. Co.*, 437 Mich. 31, 464 N.W.2d 711, 712–13 (1991); *Davies v. Butler*, 95 Nev. 763, 602 P.2d 605, 613 (1979); *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn.1992); *French v. Grigsby*, 571 S.W.2d 867, 867 (Tex.1978); *Dixon v. Stewart*, 658 P.2d 591, 598 (Utah 1982); *Cunningham v. Western Liquid Propane Gas Serv., Inc.*, 39 Wash.App. 185, 693 P.2d 123, 124 (1984); *Britton v. Hoyt*, 63 Wis.2d 688, 218 N.W.2d 274, 277 (1974); *Danculovich v. Brown*, 593 P.2d 187, 195 (Wyo.1979); Conn.Gen.Stat. § 52–572h(*l*) (1991); Or.Rev.Stat. § 18.475(*l*) (1988).

and remain as factors to be considered by the jury in apportioning the parties' relative fault.

Accordingly, the decision of the trial judge is

**AFFIRMED.**

GOOLSBY and CONNOR, JJ., concur.