499 S.E.2d 509

**Angileek FERNANDERS, as Personal Representative of the Estate of Micha Fernanders, Respondent,**

**v.**

**MARKS CONSTRUCTION OF SOUTH CAROLINA, INC.; Rochester Midlands Corp., International Pavilion, L.P.; FKL Go–Karts, Inc.; and FKL Kartworld,**

**of whom International Pavilion, L.P., is Appellant.**

**No. 2824.**

Court of Appeals of South Carolina.

Heard Jan. 7, 1998.

Decided April 13, 1998.

Rehearing Denied May 21, 1998.

James C. Cothran, Jr., of Holcombe, Bomar, Gunn & Bradford, Spartanburg, for appellant.

Kenneth C. Anthony, Jr., of Knie, White & Anthony, Spartanburg, for respondent.

HEARN, Judge:

This is a tort action. International Pavilion, L.P., appeals the jury's findings of comparative fault and award of damages. It argues the trial judge erred in refusing to charge the jury on the effect of joint and several liability and that joint and several liability is obsolete under comparative negligence. We disagree and affirm.

## *FACTS*

Micha Fernanders, age six, drowned when she fell from a bumper boat into a pond at International Pavilion, an amusement park located in Spartanburg County. Although the pond was only three to four feet deep, Micha's clothing became caught in the boat's propeller, trapping her beneath the boat. The child could not be seen because International Pavilion had colored the water in the pond.

Angileek Fernanders, Micha's mother, brought this action alleging negligence and recklessness against International Pavilion and FKL Go–Karts, Inc., the manufacturer of the bumper boat. Marks Construction, the builder of the pond, was also named as a defendant, but settled with Fernanders.

FKL did not submit to personal jurisdiction and thus did not appear at trial. After denying International Pavilion's motion to sever FKL from the case, the trial judge charged the jury on the law of comparative negligence and punitive damages. After deliberations began, the jury submitted the following question to the judge: "Regarding the absence of FKL, is International Pavilion responsible for paying damages for which FKL is responsible?" The judge responded:

Let me simply say that I can't answer that question except in this fashion. [That] is not a factor for you to consider in arriving at your determination in the case. Your verdict ... must be based strictly upon the testimony and evidence presented during the trial and the law as I have given it to you during my instruction.

Counsel for International Pavilion objected to the charge. He stated: "I submit the Court should charge the jury about the fact that the verdict will be joint and severable and if they don't collect from ... FKL, then International will pay it

all.... I believe they should know that it's joint and severable in South Carolina because that's the law." The trial judge denied this request.

Thereafter, the jury returned its verdict, finding Fernanders five percent negligent, International Pavilion fifteen percent negligent, and FKL eighty percent negligent. The jury awarded $750,000 actual damages and assessed $1,000,000 punitive damages against FKL.

## DISCUSSION

### I.

International Pavilion argues that the trial judge erred in refusing to charge the jury on the concept of joint and several liability. We disagree.[1]

■ A trial judge is required to charge only the current and correct law of South Carolina. *McCourt By and Through McCourt v. Abernathy*, 318 S.C. 301, 306, 457 S.E.2d 603, 606 (1995) (judge did not err in refusing to give a charge having a tendency to confuse the jury). Ordinarily, a trial judge has a duty to give a requested instruction that correctly states the law applicable to the issues and evidence. *Brown v. Smalls*, 325 S.C. 547, 554–55, 481 S.E.2d 444, 448 (Ct.App.1997). In a case involving special verdicts and interrogatories, the trial court shall instruct the jury as may be necessary to enable the jury to make its findings upon each issue. Rule 49(a), SCRCP.

■ In support of its position, International Pavilion cites cases from other jurisdictions, including those discussed below. Although commentators suggest a trend toward informing juries about the effect of their verdicts,[2] only seven states

---

1. Whether this argument is preserved for appeal is a close question. While we recognize the general rule set forth in Rule 51, SCRCP, that a party must object to a charge prior to the beginning of the jury's deliberations, we decline to hold that lawyers must request a charge in anticipation of a jury's question which is irrelevant to the disposition of the case.

2. 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2509, at 194–97 (1995); Price Ainsworth & Mike C. Miller, *Removing the Blindfold: General Verdicts and Letting the Jury Know the*

have addressed whether courts should inform juries about the effect of joint and several liability in comparative negligence cases. The Supreme Court of West Virginia has refused to permit such a charge, finding the issues raised by joint and several liability differ from those presented by modified comparative negligence. *Valentine v. Wheeling Elec. Co.*, 180 W.Va. 382, 376 S.E.2d 588, 592 (1988). Colorado's legislature created the same prohibition by statute. Colo.Rev.Stat. § 13–21–111.5(5) (1989). By contrast, Hawaii, Idaho, Iowa, Montana, and Wyoming have permitted trial courts to issue joint and several liability charges.[3] These decisions reflect a judicial apprehension about the harshness of modified comparative systems and an attempt to remedy this effect by allowing juries to use notions of "responsibility and fairness" in calculating percentages.[4] Note 3, *supra;* F. Patrick Hubbard & Robert L. Felix, *Comparative Negligence in South Carolina: Implementing Nelson v. Concrete Supply Co.*, 43 S.C.L.Rev. 273, 319–20 (1992).

We decline to align ourselves with the jurisdictions that require trial courts to issue joint and several liability charges and reject the notion that juries should use normative analysis or outcome-based reasoning to arrive at a verdict. Every litigant is entitled to an impartial finder of fact. *Day v. Kilgore*, 314 S.C. 365, 368, 444 S.E.2d 515, 517 (1994) (citing *Offutt v. United States*, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11

---

*Effects of Its Answers*, 29 S.Tex.L.Rev. 233, 237–38 (1987); Elliott Talenfeld, *Instructing the Jury as to the Effect of Joint and Several Liability: Time for the Court to Address the Issue on the Merits*, 20 Ariz.St.L.J. 925, 933 (1988); Brad John Berkness, Comment, *Jury Instructions on Joint & Several Liability*, 67 Wash.L.Rev. 457, 467–68 (1992); Stuart F. Schaffer, Comment, *Informing the Jury of the Legal Effect of Special Verdict Answers in Comparative Negligence Actions*, 1981 Duke L.J. 824, 836–39 (1981).

**3.** *Kaeo v. Davis*, 68 Haw. 447, 461–62, 719 P.2d 387 (1986); *Luna v. Shockey Sheet Metal & Welding Co.*, 113 Idaho 193, 743 P.2d 61, 65 (1987); *Reese v. Werts Corp.*, 379 N.W.2d 1, 3–4 (Iowa 1985); *DeCelles v. State*, 243 Mont. 422, 795 P.2d 419, 421 (1990); *Coryell v. Town of Pinedale*, 745 P.2d 883, 886 (Wyo.1987) (superseded by statute).

**4.** These states, with the exception of Hawaii, have not enacted the Uniform Contribution Among Joint Tortfeasors Act. Table Of Jurisdictions Wherein Act Has Been Adopted, General Statutory Notes, 12 U.L.A. 185 (1995 and West Supp.1997).

(1954)). Giving instructions about the effect of joint and several liability seriously compromises this right. In our view, charging the jury on the concept of joint and several liability would be similar to charging the jury on the existence of liability insurance, something that is specifically proscribed by South Carolina law. Rule 411, SCRE; *Dunn v. Charleston Coca–Cola Bottling Co.*, 311 S.C. 43, 45, 426 S.E.2d 756, 757– 58 (1993). The same policy considerations which support the rule regarding informing the jury about the existence of insurance require that the jury not be instructed on joint and several liability. The prejudice inherent in such an instruction is manifest.

We therefore hold the trial judge did not err in refusing to charge the jury on the law of joint and several liability. Because the doctrine has no bearing on the jury's ultimate fact-finding role in determining the relative negligence of joint tortfeasors, the manner in which any judgment would be paid was not a proper subject for the jury's consideration.[5]

## II.

International Pavilion also asserts the trial court erred in finding that it was jointly and severally liable for Fernanders' damages, arguing the doctrine of joint and several liability is "obsolete" and "unjust" under a comparative negligence system.[6] We disagree.

The concept of joint and several liability is deeply grounded in tort law. *See Merryweather v. Nixan,* 101 Eng.Rep. 1337, 1337 (1799) (*discussed in Atlantic Coast Line R. Co. v. Whetstone*, 243 S.C. 61, 68, 132 S.E.2d 172, 175 (1963) *and M & T Chem., Inc. v. Barker Indus., Inc.,* 296 S.C. 103, 104–05, 370 S.E.2d 886, 887–88 (Ct.App.1988), *cert. denied*, 298 S.C. 75,

---

5. A charge on joint and several liability would be incomplete without a charge on South Carolina's Contribution Among Tortfeasors Act, S.C.Code Ann. §§ 15–38–10 to 15–38–70 (Supp.1997), which ameliorates any injustice which may result from joint and several liability.

6. During closing arguments, International Pavilion's counsel advised the jury that his client might be forced to shoulder FKL's portion of actual damages and that it should adjust its verdict accordingly by assessing punitive damages against FKL. We recognize the inconsistency of this position and the argument raised on appeal.

378 S.E.2d 261 (1989)); Guido Calabresi & Jeffrey O. Cooper, *New Directions in Tort Law,* 30 Val.Univ.L.Rev. 859, 879 (1996). Under this rule, if A is ten percent negligent and B is ninety percent negligent, and together they combine to injure C, they are both liable to C. C can recover one hundred percent of his or her damages from either one. Without question, the rule of joint and several liability favors plaintiffs since the aggregate wealth of the defendants stands behind the judgment regardless of the proportionate responsibility of the defendants individually for the loss. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 67, at 475 (5th ed. 1984).

Before the adoption of comparative negligence a plaintiff's contributory negligence completely thwarted recovery. The fairness of the rule of joint and several liability was much more apparent; as between a defendant who was less at fault than a co-defendant and a plaintiff who was completely innocent, it was reasonable to place the loss on the wrongdoing defendant. With the adoption of comparative negligence,[7] however, retention of the doctrine of joint and several liability is less defensible.

Commentators have noted that joint and several liability is not consistent with the purpose of comparative negligence, which is to apportion damages on the basis of relative fault. Victor E. Schwartz, *Comparative Negligence* § 9–4(c)(5), at 217 (1994); F. Patrick Hubbard & Robert L. Felix, *Comparative Negligence in South Carolina; Implementing Nelson v. Concrete Supply Co.,* 43 S.C.L.Rev. 273, 306 (1992) (discussing the "conceptual tension" between the comparative approach of *Nelson* and noncomparative approach of joint and several liability); *see also* Henry Wood & Beth Deere, *Comparative Fault* § 13:4, at 234–36 (3d ed. 1996) (reviewing doctrine's status in comparative negligence jurisdictions). Nine states with comparative negligence schemes continue to follow the traditional common law rule.[8] Thirty-seven others, however,

---

7. The South Carolina Supreme Court adopted comparative negligence in *Nelson v. Concrete Supply Co.,* 303 S.C. 243, 244, 399 S.E.2d 783, 784 (1991).

8. *Wheeling Pipe Line, Inc. v. Edrington,* 259 Ark. 600, 535 S.W.2d 225, 226 (1976); Del.Code Ann. tit. 10, §§ 6301–6308 (Michie 1996); Me.

have either abolished or partially abrogated the doctrine.[9] The implementation of this change has occurred primarily by statute. John W. Wade, *Should Joint and Several Liability of Multiple Tortfeasors be Abolished?*, 10 Am.J.Tr.Adv. 193, 207 (1986).

Although *Nelson* adopted a comparative system for allocating liability between a plaintiff and multiple defendants, the

---

Rev.Stat.Ann. tit. 14, § 156 (West 1980); *Joia v. Jo–Ja Service Corp.*, 817 F.2d 908, 917–18 (1st Cir.1987), *cert. denied sub nom. Boat Niagara Falls, Inc. v. Joia*, 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988) (applying Massachusetts law); *Gustafson v. Benda*, 661 S.W.2d 11, 18 (Mo.1983); Pa.Stat.Ann. tit. 42, § 7102(b) (West 1982); R.I. Gen. Law. §§ 10–6–1 to 10–6–11 (Michie 1997); S.C.Code Ann. § 15–28–10 (Supp. 1997); *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879, 886 (1979). Each of these states has adopted some version of the Uniform Contribution Among Tortfeasors Act. Table Of Jurisdictions Wherein Act Has Been Adopted, *supra* note 4.

**9.** Of this number, eleven states appear to have abolished the doctrine completely: Alaska Stat. § 0917.080(d) (Michie 1997); Conn.Gen.Stat. Ann. § 52–572h(c) (West 1991); Ga.Code Ann. § 51–12–33(a) (Michie Supp.1997); 735 Ill.Comp.Stat.Ann. 5/2–1117 (Smith–Hurd Supp. 1997); Ind.Code Ann. § 34–4–33–5(b)(4) (Michie 1997); Kan.Stat.Ann. § 60–258a(d) (West Supp.1997); Ky.Rev.Stat. § 411.182(3) (Michie 1992); *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn.1992) (superseded by statute); Utah Code Ann. § 78–27–38(3) (1996); Vt.Stat.Ann. tit. 12, § 1036 (Michie Supp.1997); Wyo.Stat.Ann. § 1–1–109(e) (Michie 1997).

The remaining twenty-six states have limited the doctrine's application either to certain types of damages, causes of action, or to cases involving certain percentages of contributory negligence: Ariz.Rev.Stat. Ann. § 12–2506(D) (West Supp.1997); Cal.Civ.Code § 1431.2(a) (West Supp.1998); Colo.Rev.Stat.Ann. § 13–21–111.5(4) (1997); Fla.Stat. Ann. § 768.81(3) (West 1997); Haw.Rev.Stat.Ann. § 663–10.9 (Michie 1995); Idaho Code Ann. § 6–803(3) (Michie 1990); Iowa Code Ann. § 668.4 (West 1987); La.Civ.Code Ann. art. 2324 (West Supp.1998); Mich.Comp.Laws Ann. §§ 600.6304 & 600.6312 (West Supp.1997); Minn.Stat.Ann. § 604.02(1) (West Supp.1998); Miss.Code Ann. § 85–5–7 (Law. Co-op. 1991); Mont.Code Ann. § 27–1–703(2) (1997); Neb.Rev. Stat.Ann. § 25–21,185.10 (Michie 1995); Nev.Rev.Stat.Ann. § 41.141(5) (Michie 1996); N.H.Rev.Stat.Ann. § 507:7–e(b) (McKinney 1997); N.J.Stat.Ann. § 2A:15–5.3 (West Supp.1997); N.M.Stat.Ann. § 41–3A–1 (Michie 1996); N.Y.Civ.Prac.Law. § 1601 (McKinney 1997); N.D.Cent. Code Ann. § 32–03.2–02 (Michie 1996); Ohio Rev.Code Ann. § 2307.31 (Anderson Supp.1996); *Berry v. Empire Indem. Ins. Co.*, 634 P.2d 718, 720 (Okla.1981); Ore.Rev.Stat.Ann. § 18.485(6) (Michie Supp.1996); S.D.Codified Laws § 15–8–15.1 (Michie Supp.1997); Tex.Civ.Prac. & Rem.Code § 33.013(b) & (c) (West 1997); Wash.Rev.Code Ann. § 4.22.070 (West Supp.1998); Wis.Stat.Ann. § 895.045(1) (West 1997).

supreme court did not address the allocation of liability between multiple defendants. *See* Hubbard & Felix, 43 S.C.L.Rev. at 306. Our supreme court has, however, since the *Nelson* decision, reaffirmed the applicability of joint and several liability, albeit not in the precise context presented here. *Summer v. Carpenter*, 328 S.C. 36, 492 S.E.2d 55, 61 (1997); *American Fed. Bank, FSB v. Number One Main Joint Venture*, 321 S.C. 169, 175, 467 S.E.2d 439, 443 (1996).

This court has not hesitated to apply the reasoning of *Nelson* to harmonize certain tort concepts with the comparative approach. See *Davenport v. Cotton Hope Plantation Horizontal Property Regime*, 325 S.C. 507, 516, 482 S.E.2d 569, 574 (Ct.App.1997) *(en banc)*, *cert. granted in part*, (Aug. 8, 1997), and *Spahn v. Town of Port Royal*, 326 S.C. 632, 638–41, 486 S.E.2d 507, 510–12 (Ct.App.1997), *aff'd as modified*, 330 S.C. 168, 499 S.E.2d 205 (1998) (holding assumption of risk and last clear chance are merely factors for the jury to consider in apportioning negligence). Abrogating joint and several liability, however, would involve an expansion of *Nelson*, not merely an application. Hubbard & Felix, 43 S.C.L.Rev. at 306. Stated another way, joint and several liability could never be a factor in apportioning negligence because a plaintiff's ability to collect a judgment has no bearing on a defendant's relative degree of negligence—the only issue the jury should determine.

Moreover, the General Assembly enacted South Carolina's Contribution Among Tortfeasors Act based on the existence of joint and several liability. Although this statute was enacted prior to *Nelson*, the legislature is presumed to know the effect of changes in legal doctrine and to make changes to statutory law as needed. *Berkebile v. Outen*, 311 S.C. 50, 56, 426 S.E.2d 760, 763 (1993); 82 C.J.S. *Statutes* § 316, at 541–42 (1953).

This court declines to expand upon the supreme court's decision in *Nelson*, particularly where the effect of that expansion would nullify a statutory provision. Therefore, we affirm the trial judge's ruling that joint and several liability continues to exist under comparative negligence.

**AFFIRMED.**

HOWELL, C.J., and STILWELL, J., concur.